Rockingham
No. 92-457

ROBERT C. BAILEY

v.

ALDO AND MARIE SOMMOVIGO

August 10, 1993

*Law Offices of Jack Bryan Little*, of Boston, Massachusetts (*Jack Bryan Little* on the brief and orally), for the plaintiff.

*Ralph Stein*, of Salem, by brief and orally, for the defendants.

HORTON, J.   The plaintiff, Robert Bailey, brought a plea of assumpsit to recover the balance due under a construction contract with the defendants, Aldo and Marie Sommovigo. The defendants, in turn, brought a counterclaim seeking damages from the plaintiff for breach of contract. Following a bench trial, the Superior Court (*Smukler*, J.) dismissed both actions, holding that while the plaintiff was entitled to the balance of the contract, this amount was entirely offset by the damages resulting from the plaintiff's breach of contract. On appeal, the plaintiff argues that the defendants failed to prove damages caused by the breach of contract. We modify and affirm in part, and reverse in part.

In June 1989, the defendants entered into a written contract with the plaintiff, a general contractor, for the construction of a single-family home in Salem. Building plans supplied by the defendants called for a two-story house and garage containing 3,968 total square feet, including 3,264 square feet of living area. The contract incorporated the plans and provided that "[a]ny alteration or deviation from above specifications involving extra costs will be executed only upon written orders, and will become an extra charge over and above the estimate." The quoted contract price was $201,630.56.

On several occasions after the plaintiff began work on the home, defendant Marie Sommovigo requested modifications to the original building plans. In each instance, the plaintiff quoted a price for the requested modification, and Ms. Sommovigo orally accepted the quoted price. One modification concerned the installation of a separate heating system for the second floor of the house. The defendants paid the plaintiff $185,064.92 under the contract.

In April 1990, the plaintiff brought a plea of assumpsit to recover the balance due under the construction contract, as amended by the requested modifications. The plaintiff alleged that the total amount owed under the modified contract was $234,478.50, with a balance due of $49,414.08. The defendants responded that the house as constructed did not comport with the original building plans, and in December 1991 they filed a counterclaim seeking dismissal of the plaintiff's complaint and damages for breach of contract. Specifically, the defendants claimed that the house contained only 2,865 square feet of living area; that the dimensions of certain rooms, doors, and cabinets did not comport with the original plans; that the modifications to the home effectively thwarted the design and intent of the original plan; that the house was not constructed in a "good

and workmanlike manner"; and that the plaintiff had assessed "gross and excessive overcharges for extras."

Following a June 1992 bench trial, the trial court dismissed both the plaintiff's plea and the defendants' counterclaim. It first found that the parties' conduct manifested their intent to modify the contractual requirement that all changes to the building plan be in writing. The defendants therefore were bound to pay the agreed modification costs, which, after deductions for credits and allowances, totaled $32,847.92. With regard to the defendants' counterclaim, the trial court found that portions of the house had been painted in a defective manner, but it declined to award damages because the defendants failed to prove the cost of remedying this defect. The trial court also found that the plaintiff breached the contract by constructing a house containing less than the 3,264 square feet of living area called for by the building plans. The construction of the separate heating system, which required the installation of additional, larger heating ducts, was a "substantial cause" of the reduced living area. Although Ms. Sommovigo had requested the separate heating system, the court noted that the plaintiff had failed to explain to her "the impact the increase in duct size . . . would have upon the dimensions of the interior rooms of the house, as he had a duty to do." The court concluded that there had not been a "meeting of the minds" between the parties as to the heating system, and that there was "[n]o contractual relation between the parties . . . as to that term."

The court held that the plaintiff could recover in *quantum meruit* for the installation of the separate heating system, but it also held that the defendants were entitled to damages for the attendant loss of living area. The court noted that the record "contain[ed] a paucity of evidence" on the issue of damages, but it found "sufficient evidence to engage in a rational analysis" of this issue. It reasoned that the original contract price was $201,630.58 for 3,264 square feet of living area, or $61.77 per square foot. Multiplying $61.77 by the 2,580 square feet of living area actually provided, the court determined that the house, as constructed, had a value of $159,366.60, or $42,263.98 less than the original contract price. From $42,263.98, the trial court subtracted $32,369.74—representing its determination of the balance owed under the contract—and concluded that the defendants had paid $9,894.24 in excess of the value they received. The trial court noted that the defendants had not provided evidence to support a judgment in this amount, and it used its damage calculation "for the sole purpose" of determining that the plaintiff had been

adequately compensated for his services. The trial court concluded that the appropriate remedy was dismissal of both the plaintiff's plea and the defendants' counterclaim.

On appeal, the plaintiff contends that the trial court erred in calculating that the balance due under the modified contract totaled $32,369.74. According to an itemized list of costs prepared by the plaintiff and uncontroverted by the defendants, the initial cost of the contract modifications totaled $43,216.76. The list indicated a deduction of $10,368.84 in credits and allowances, such that the cost of modifications totaled $32,847.92. Adding to this amount the original contract price of $201,630.56, the court calculated that the modified contract price was $234,478.50. To determine the balance due under the contract, the trial court disallowed $375 in trash removal costs, and it deducted the $185,064.92 already paid by the defendants, as well as a $6,300 note held by the plaintiff. The trial court then deducted the $10,368.84 in allowances that, as reflected in the plaintiff's cost list, had already been credited to defendants, resulting in its conclusion that the balance owed was $32,369.74.

■■ Although we generally defer to the trial court's findings of fact, this rule does not apply where a finding is unsupported by the evidence or erroneous as a matter of law. *See Ryan v. Perini Power Constructors, Inc.*, 126 N.H. 171, 173, 489 A.2d 137, 138 (1985). In this case, allowing the defendants a double credit for allowances was clearly in error. We hold that the balance due under the modified contract should be increased by $10,368.84 to $42,738.58. The plaintiff further argues that the trial court should not have deducted the $6,300 note, which he contends was never executed by the defendants. The plaintiff, however, has pointed to no evidence to support his argument that the note was not executed. At trial, the only reference to the note appeared in the list of costs prepared by the plaintiff. The list indicated that the face amount of the note was properly deducted from the balance due under the construction contract. The plaintiff made no attempt to identify errors in his list of costs, and the trial court relied, without objection from the plaintiff, on this list. Where a party acquiesces to a trial court's ruling, the ruling becomes the law of the case and cannot be attacked on appeal. *See, e.g., Arnold v. City of Manchester*, 119 N.H. 859, 864, 409 A.2d 1322, 1326 (1979). We therefore decline to add the value of the note to the balance due under the contract.

The plaintiff also challenges the trial court's decision to dismiss his plea as part of its resolution of the defendants' counterclaim. He first argues that the house contained the amount of living area con-

templated under the original building plans, and that he did not breach the contract. Moreover, the plaintiff argues that even if he breached the contract, the trial court erred in dismissing his plea when he had already established his right to the balance due under the contract.

■ We need not consider whether the plaintiff breached the contract, as we conclude that the trial court's dismissal of the plaintiff's plea, after it found there was insufficient evidence to perform a reliable damages calculation, was in error. We recognize that "[t]he law does not require absolute certainty for recovery of damages." *Petrie-Clemons v. Butterfield*, 122 N.H. 120, 125, 441 A.2d 1167, 1171 (1982) (quotation omitted). On review, we consider the evidence in the light most favorable to the prevailing parties below, and will overturn a damage award only if we find it to be clearly erroneous. *See Belknap Textiles, Inc. v. Belknap Industries, Inc.*, 121 N.H. 28, 30, 424 A.2d 1141, 1142 (1981).

■ Where a contractor has breached an agreement through defective performance, an approved measure of damages is "the difference between the value the building would have had if constructed as promised and its value as actually constructed." *M.W. Goodell Const. Co., Inc. v. Monadnock Skating Club, Inc.*, 121 N.H. 320, 322–23, 429 A.2d 329, 330 (1981). In this case, however, the defendants made no attempt to quantify the damages they incurred as a result of the lost living area. Recognizing this, the trial court performed its own damages calculation, but it admitted that its "methodology of computing damages is based on assumptions that may or may not be valid and supported by the evidence," and it acknowledged that its damages calculation did not "inspire confidence." The court was "uncertain" as to whether the value of the lost living area could be calculated by dividing the original contract cost by the square footage of living area called for under the contract. It was also "uncertain" as to how much of the lost living area should be attributed to the expanded duct work required by the separate heating system, rather than other structural modifications that had been authorized by the defendants. Finally, the court was "uncertain that damages that are calculated on a dollars per square foot basis accurately captures the qualitative difference between living in more or less space." We note that the trial court's method of calculating damages was suspect in other respects. For example, the calculation failed to consider whether the square footage in a home should be valued differently in accordance with where in the home the footage is located. In addi-

tion, the calculation did not account for changes in the marginal value of living area, once a minimum amount of such area had been achieved. In any event, doubt as to the substantial accuracy of its damages estimate prevented the trial court from awarding the defendants a judgment equal to that estimate. Yet, by dismissing the plaintiff's plea, the trial court effectively awarded the defendants a judgment equal to the $42,738.58 balance that the plaintiff otherwise would have been entitled to recover. While we do not require absolute certainty in the award of damages, we do require an indicia of reasonableness. *See Baker v. Dennis Brown Realty*, 121 N.H. 640, 646, 433 A.2d 1271, 1275 (1981); *Steel v. Bemis*, 121 N.H. 425, 429, 431 A.2d 113, 116 (1981).

■■ In their counterclaim, the defendants requested two forms of relief: dismissal of the plaintiff's plea and an award of damages. Had the trial court found unenforceable the oral modifications to the construction contract, it could have dismissed the plaintiff's plea. In addition, had the defendants proved the costs stemming from the plaintiff's alleged breach, the trial court could have awarded damages, which then could have been used to reduce or eliminate the prior judgment entered in favor of the plaintiff. *See Zurback Steel Corp. v. Edgcomb*, 120 N.H. 42, 44, 411 A.2d 153, 155 (1980). In this case, the trial court effectively performed such a setoff even though the defendants had not sufficiently proved their damages. The party seeking to recover damages has the burden of proving by a preponderance of evidence the extent and amount of such damages. *See Whitehouse v. Rytman*, 122 N.H. 777, 780, 451 A.2d 370, 372 (1982); *Grant v. Town of Newton*, 117 N.H. 159, 162, 370 A.2d 285, 287 (1977). Here, the trial court found the evidence insufficient to justify an award of damages on the defendants' counterclaim. Thus, the counterclaim "must fail . . . whether or not fault existed on the part of" the plaintiff. *Grant*, 117 N.H. at 162–63, 370 A.2d at 287. Since the defendants' damages had not been established with any degree of certainty, the trial court should have entered a verdict in favor of the plaintiff on the defendants' counterclaim.

The defendants argue that the trial court based its ruling on *quantum meruit*, in that it dismissed the plaintiff's plea in order to prevent unjust enrichment. The trial court's use of *quantum meruit*, however, related only to the plaintiff's ability to recover outside of the contract the value of labor and materials expended to install the separate heating system. The court expressly held, however, that the shortage in living area constituted a breach of contract, and it proceeded to consider the plaintiff's liability for damages.

■ We find that the trial court should have awarded judgment for the plaintiff on the defendants' counterclaim, and we reverse its dismissal of the plaintiff's claim. In so doing, we reinstate the trial court's prior and independent ruling that the defendants are liable for the balance due under the modified construction contract. That ruling shall be enforced in conformity with our conclusion that the balance due under the modified contract is $42,738.58.

*Modified and affirmed in part; reversed in part.*

All concurred.