Hillsborough-northern judicial district
No. 96-686

# DENNIS BEZANSON, TRUSTEE OF ATOM CONTRACTING, INC.

## v.

# HAMPSHIRE MEADOWS DEVELOPMENT CORP.

November 18, 1999

*Wadleigh, Starr, Peters, Dunn & Chiesa*, of Manchester (*William S. Gannon & a.* on the brief, and *Robert E. Murphy, Jr.* orally), for the plaintiff.

*Steven G. Shadallah*, of Salem, by brief and orally, for the defendant.

THAYER, J. The plaintiff, Dennis Bezanson, trustee for Atom Contracting, Inc. (Atom), appeals from a Superior Court (*Groff*, J.) order issued after a lengthy trial. The court reduced the plaintiff's damages arising from defendant Hampshire Meadows Development Corporation's breach of contract by the amount of the defendant's damages, even though the defendant did not file a claim for recoupment. We affirm in part, reverse in part, and remand.

The following facts were adduced at trial. In March 1990, Atom contracted to provide the defendant labor and materials to construct a housing development. The contract price was $2,895,000. The contract required Atom to pay for inspection fees. It permitted the defendant to withhold payments to Atom on account of, *inter alia*, unremedied defective work and failure to pay subcontractors. The contract also provided that in the event of the defendant's breach, Atom, upon seven days written notice, could terminate the contract and recover payment for "[w]ork executed and for proven loss . . . , including reasonable overhead, profit and damages."

After construction began, a deed restriction was discovered that forced the defendant to modify its plans. Several change orders ensued, increasing the contract price to $3,163,582.

In June 1992, the defendant refused to make further payments until Atom performed certain specified duties. Later that month, Atom ceased all work on the project. Atom subsequently filed for protection under Chapter 11 of the United States Bankruptcy Code. *See* 11 U.S.C.A. § 301 (West 1993). The defendant filed a proof of claim for damages in Atom's bankruptcy case alleging defective or incomplete work. The defendant filed a motion for relief from the automatic stay so it could terminate the contract, but never requested relief from the automatic stay to pursue a claim for damages in this case.

The plaintiff, as trustee for Atom in bankruptcy, sued the defendant for breach of contract. As damages, the plaintiff sought a percentage of the completed work according to the agreed statement of values in the contract. The defendant did not file a counterclaim or a claim for recoupment. *See* SUPER. CT. R. 33.

The superior court found that the defendant materially breached the contract by refusing to pay Atom and that any breach by Atom was *de minimis*. The court held, therefore, that Atom's cessation of work on the project was justified.

In calculating damages arising from the defendant's breach, the court found that the plaintiff was entitled to recover damages for all work performed by Atom. The court concluded that the total amount Atom earned under the contract was $1,054,580 and that Atom received $970,585. Thus, the defendant owed the plaintiff $83,995. The court then held that the defendant was "entitled to certain setoffs" for amounts for which the plaintiff was contractually liable. Specifically, the court reduced the amount due to the plaintiff by: (1) amounts the defendant paid to subcontractors; (2) the cost of correcting deficiently completed work; (3) unpaid inspection fees; and (4) the cost to complete work for which Atom billed the defendant, but did not actually perform. Because the court found that the reductions exceeded the amount due to the plaintiff, the plaintiff's recovery was zero. This appeal followed.

On appeal, the plaintiff argues that the court erred in: (1) allowing the defendant a reduction against damages because the defendant never filed a counterclaim or sought a recoupment; (2) allowing the defendant to deduct the value of defective or unperformed work when the value of such work was part of the defendant's unsecured bankruptcy claim; (3) ruling that the plaintiff was not entitled to damages for lost profits, overhead, and interest; and (4) calculating the value of Atom's allegedly defective work. The plaintiff also alleges that the court's finding concerning the meaning of the contract term used to calculate the amount owed by the defendant's breach was clearly erroneous and unsupported by the evidence. We address each issue in turn.

## I. Reduction of Damages

The plaintiff contends that the trial court's *sua sponte* decision to reduce the plaintiff's damages constituted unfair surprise and prejudiced his ability to present his case. In terms of the trial court's measure of damages, we are only asked to consider whether the reductions taken were proper. The plaintiff argues that the reductions constitute a recoupment to which the defendant was not

entitled because it failed to file for such relief. *See* SUPER. CT. R. 33. The defendant responds that it was not required to file a claim for recoupment because the reductions were integral to assessing the measure of the plaintiff's damages.

> A breach of contract may prevent a loss . . . . In so far as it prevents loss, the amount will be credited in favor of the wrongdoer.
>
> . . . .
>
> [W]hen a building contractor is wrongfully prevented from completing construction, the cost of completion that is saved is *deducted* from the contract price to which full performance would have entitled him; also, . . . when an owner receives a defective or incomplete building, any part of the price that is as yet unpaid is *deducted* from the cost of completion that is awarded to him . . . .

5 A. CORBIN, CORBIN ON CONTRACTS § 1038, at 236-38 (1964) (emphasis added). This calculation, however, presupposes that the defendant complied with procedural prerequisites. The fact that the reductions are integral to damages does not necessarily obviate the need to file a recoupment. *See* SUPER. CT. R. 33; *cf. Zurback Steel Corp. v. Edgcomb*, 120 N.H. 42, 44, 411 A.2d 153, 155 (1980). Although the reductions may have been "integral" to contractual damages, we must determine whether the reductions constituted a defense, requiring no additional filing, or a recoupment.

A recoupment is a type of counterclaim "aris[ing] out of the same contract or transaction as that constituting the basis of plaintiffs' claim." *Varney v. General Enolam Co.*, 109 N.H. 514, 516, 257 A.2d 11, 13 (1969). The doctrine of recoupment in a contract action permits the defendant to reduce or eliminate the plaintiff's damages, or seek its own damages in excess of the damages claimed by the plaintiff, either because the plaintiff has not complied with a cross obligation of the contract or because the plaintiff violated another duty under the contract. *Zurback Steel Corp.*, 120 N.H. at 44, 411 A.2d at 155. If recoupment is used merely to defeat the plaintiff's claim, rather than to recover excess amounts, it is known as "defensive recoupment." *Id.* In this case the trial court eliminated the plaintiff's damages but did not afford the defendant affirmative relief. Therefore, if such reduction constituted a recoupment, it would be a defensive recoupment.

The test of whether the deductions taken by the trial court constitute a defensive recoupment or a defense lies in whether the

relief sought by the defendant could stand as an independent claim, or would merely defeat the plaintiff's cause of action. *Cf. In Re Marriage of Black*, 477 N.E.2d 1359, 1363 (Ill. App. Ct. 1985); *Reswick v. Owens-Illinois Glass Company*, 156 N.Y.S.2d 712, 715 (Sup. Ct. 1956).

■ In order to ascertain whether the reductions constitute a defensive recoupment or a defense, we must analyze each reduction. The court reduced the amount due to the plaintiff by, *inter alia*, amounts paid to subcontractors, inspection fees, and deficiently completed work. Because these reductions did not derive from the defendant's attack on the plaintiff's claim for damages, but rather constituted damages sought by the defendant, *see Reswick*, 156 N.Y.S.2d at 715, and because the deductions arose from the same contract as the plaintiff's claim, they amounted to a recoupment, *see Varney*, 109 N.H. at 516, 257 A.2d at 13; *Johnson v. Association*, 68 N.H. 437, 438-39, 36 A. 13, 13 (1895) (employment of plaintiff by defendant and rendition of services by plaintiff constituted single transaction for purposes of recoupment); *cf. Thibault v. Lambert*, 87 N.H. 77, 79, 174 A. 46, 48 (1934) (permitting defendant sued for unpaid work under contract to seek recoupment for damages for defective materials and workmanship). In fact, the damages sought to be recouped are the direct result of Atom's improper performance of services under the contract. *See Johnson*, 68 N.H. at 439, 36 A. at 13.

Having concluded that the reductions for the payment to subcontractors, inspection fees, and deficiently completed work amounted to a recoupment, we now decide whether the trial court properly allowed the defendant to recoup those losses against the plaintiff's damages. In this situation the defendant may elect to either set up his claim in answer to the plaintiff's complaint, or file a recoupment. *Thibault*, 87 N.H. at 79-80, 174 A. at 48. The plaintiff asserts that because the defendant failed to do either, the court erred in allowing the defendant to recoup costs. We agree.

According to the plaintiff, the court's post-trial decision to award a recoupment was an unfair surprise that prejudiced the presentation of his case at trial. The plaintiff argues that he was denied the opportunity to defend against the defendant's claim.

Superior Court Rule 33 provides that "[n]o . . . recoupment shall be filed after thirty days from the return day, except by leave of the Court and upon payment of costs; and when a . . . recoupment is filed, a copy shall be given to the plaintiff or his attorney." The court found that the defendant filed a claim against the plaintiff's surety

which it later withdrew. The defendant admits that it failed to file a counterclaim against the plaintiff. The defendant claims, however, to have asserted during trial its right to have the damages it owed to the plaintiff reduced by the amount of damages caused by the plaintiff. The defendant offers as support the following colloquy that occurred during examination of the owner of the defendant company:

Q. [Y]ou didn't sue the plaintiff [by way of] counterclaim?

A. No, I didn't.

. . . .

Q. But if this, if these offsets accurately reflect what it would cost to correct, do you believe that [the plaintiff] should be paid in full for the work that [it] did?

A. No.

We do not find that this exchange complies with Rule 33. In its order, the court notes that the defendant alleges that Atom breached the contract. The court stated, however, that "the defendant has not counterclaimed for damages for [Atom's] alleged breach." Under the facts of this case, we conclude that the court's allowance of the defendant's counterclaim amounted to an abuse of discretion. *See Miami Subs Corp. v. Murray Family Trust and Kenneth Dash Partnership*, 142 N.H. 501, 518, 703 A.2d 1366, 1376 (1997) (holding abuse of discretion to award attorney's fees where litigant had no pending request for such); *cf. City of Concord v. 5,700 Square Feet of Land*, 121 N.H. 170, 172, 427 A.2d 46, 48 (1981) (noting that court's decision to allow counterclaim is within its discretion). Rule 33 does not distinguish between defensive and offensive recoupment, and we read its plain language as applying to both types. Consequently, any reduction that constitutes a recoupment was erroneous. *Cf. Lehigh &C Co. v. Company*, 89 N.H. 274, 276, 197 A. 410, 411 (1938) (holding court did not abuse its discretion in rejecting counterclaim where defendant failed to file plea within requisite period); *Phinney v. Levine*, 117 N.H. 968, 970, 381 A.2d 735, 736 (1977) (holding no abuse of discretion in denying counterclaim on contract where counterclaimant, *inter alia*, failed to comply with filing deadline).

We next address whether the trial court's reduction for incomplete work was a recoupment or a defense. The trial court found that Atom failed to complete a paving job and failed to install

water pipe even though that work was represented to have been completed. The court found that the reasonable cost to complete that work was $37,807 and reduced the plaintiff's damage award by that amount. We hold that this constituted a proper reduction because the court found that the plaintiff did not carry its burden of proving by a preponderance of evidence the additional $37,807 in damages. *See Bailey v. Sommovigo*, 137 N.H. 526, 531, 631 A.2d 913, 917 (1993). We conclude that the defendant successfully defended the plaintiff's suit by demonstrating that Atom did not complete work for which it claimed $37,807 in damages.

*II. Bankruptcy*

The plaintiff next contends that the court erred and deprived the bankruptcy court of jurisdiction over the distribution of Atom's estate by allowing the defendant to reduce the value of unperformed and defective work from amounts owed the plaintiff when the value of such work was part of the defendant's unsecured bankruptcy claim and where the defendant had not received relief from the automatic stay. *See* 11 U.S.C.A. § 362(a)(7) (West 1993). "The act of filing a petition for bankruptcy stays the commencement or continuation . . . of a judicial . . . action or proceeding against the debtor that was or could have been commenced before the commencement of the [bankruptcy case] . . . or to recover a claim against the debtor that arose before the commencement of the [bankruptcy] case." *Overnite Transp. v. Ryder/P-I-E Nationwide*, 137 B.R. 766, 767 (Bankr. E.D. Mo. 1992) (quotation omitted).

■ The plaintiff first contends that the defendant needed to obtain relief from the automatic stay. To the extent that the reduction in damages was based upon the defendant's successful defense that Atom did not complete work for which it claimed damages, we hold that the defendant did not need relief from the automatic stay. *See H.G. Hall Const. Co. v. J.E.P. Enterprises*, 321 S.E.2d 267, 270, 271 (S.C. Ct. App. 1984) (automatic stay does not bar action brought by debtor and does not preclude defendant in said action from raising defenses).

*III. Lost Profits*

Next, the plaintiff argues that the court impermissibly rejected expert testimony as to Atom's anticipated profit. The contract provided that in the event of the defendant's breach, Atom, upon seven days written notice, could terminate the contract and recover payment for, *inter alia*, lost profits. The court rejected the testi-

mony of both parties' expert witnesses regarding Atom's anticipated profits because it found their opinions unpersuasive and based upon historic profits. In reviewing the trial court's denial of lost profits, we examine the evidence in the light most favorable to the defendant because it prevailed below. *Petrie-Clemons v. Butterfield*, 122 N.H. 120, 124, 441 A.2d 1167, 1170 (1982).

According to the plaintiff, both his and the defendant's experts "testified that Atom had earned approximately 10.7% profit in past years. Thus, both experts who testified on the subject of lost profits indicated that Atom would have earned at least 10.7% profits if [the defendant] had not breached." The plaintiff's brief fails, however, to point out where in the almost two thousand pages of transcripts that the defendant's expert witness gave such testimony. *See* SUP. CT. R. 16(9) (mandating that all references in brief to record must be accompanied by appropriate page number). We did, however, find testimony in the record by the defendant's expert that the most Atom earned since 1987 is a gross profit of 10.7%. Such testimony does not, however, necessarily lead to the conclusion that the expert concluded that Atom would have made 10.7% profit based upon the contract entered into between it and the defendant.

According to the plaintiff, because the court allowed expert testimony regarding profits, it must have concluded that the experts were better qualified to address the issue than the trial judge. The plaintiff therefore contends that the trial court unreasonably rejected expert testimony and improperly injected its own opinion into a province usually reserved for experts. "[C]onflicts in the evidence are to be resolved by the trial judge, who could accept or reject such portions of the evidence presented as [the court] found proper, including that of the expert witnesses." *Crown Paper Co. v. City of Berlin*, 142 N.H. 563, 570, 703 A.2d 1387, 1391 (1997) (quotation and brackets omitted).

Other testimony conflicted with that of the experts. Relying in part on Atom's project manager's testimony that the profit margin on the project was "negligible . . . [m]aybe one, two percent, . . . if any," the court found that the plaintiff failed to establish that it was "probable that any profit would have been earned had this job been completed." Further testimony could have led the trial court to conclude that Atom underbid the project to the point that it would realize no profit. Another contractor who bid on the project testified that his losing bid was approximately $7 million, nearly $4 million higher than Atom's.

In addition, the court heard testimony from a project manager for the contractor that purchased the site and took over

the job when Atom terminated working on the project. At that point, the project was twenty-five to thirty percent complete. According to the project manager, the cost to his company to complete the project was nearly $4 million after Atom's departure. Accordingly, we cannot say from the evidence presented that the court's findings regarding lost profits were clearly erroneous. *See Petrie-Clemons*, 122 N.H. at 126-27, 441 A.2d at 1171.

## *IV. Overhead*

■ The plaintiff argues that the court erred by refusing to award it overhead costs and expenses. The contract provided that "[i]f the [defendant] fails to make payment as required, [Atom] may, upon seven additional [days] written notice to the [defendant], terminate the Contract and recover from the [defendant] payment for all Work executed and for proven loss . . ., including reasonable overhead." The trial court acknowledged that the contract contemplated recovery for overhead, but did not award damages for such expenses because, according to the court, "[t]he only damages claimed by [the] plaintiff are the value of the work completed under the contract, and the profit." On appeal, the plaintiff makes a passing reference to the fact that it introduced testimony regarding overhead of thirty-two percent. The plaintiff, as appellant, carries the burden on appeal to point out where it claimed damages for overhead. It has not done so. In fact, on the record before us, we find nothing to support that such a claim was made. *See In re Thomas M.*, 141 N.H. 55, 57, 676 A.2d 113, 115 (1996) ("appellant has burden of providing court with sufficient record to decide issue on appeal"). On that basis, we find that this argument warrants no further review. *Cf. Appeal of Trotzer*, 143 N.H. 64, 70-71, 719 A.2d 584, 589 (1998).

## *V. Award of Interest*

The plaintiff argues that the trial court should have awarded it interest on the judgment. The contract provides that "[p]ayments due and unpaid under the Contract shall bear interest from the date payment is due at the rate [of] Prime [plus] 2%."

"[T]he proper interpretation of a contract is ultimately a question of law for this court, and we will determine the meaning of the contract based on the meaning that would be attached to it by reasonable persons." *Gamble v. University of New Hampshire*, 136 N.H. 9, 13, 610 A.2d 357, 360 (1992) (quotation omitted). "Therefore, we will independently interpret the contract, using facts found by the trial court." *Merrimack School Dist. v. Nat'l School Bus Serv.,*

140 N.H. 9, 11, 661 A.2d 1197, 1198 (1995) (quotation omitted). "Although we generally defer to the trial court's findings of fact, this rule does not apply where a finding is unsupported by the evidence or erroneous as a matter of law." *Bailey*, 137 N.H. at 529, 631 A.2d at 916.

■ The defendant contends that no interest was due because, after the reduction taken by the trial court, the plaintiff's recovery was zero. Pursuant to the contract, interest had been accruing on work performed by Atom from the day payment on that work was due. Because we conclude that the court impermissibly allowed the defendant to recoup damages against monies owed to the plaintiff, we remand for the court to recalculate damages and to assess interest based upon that amount in accordance with the contract.

*VI. Damage Calculation on "Per Lot" Basis*

The plaintiff argues that the trial court should have calculated damages on a "per lot" basis. The plaintiff argues that the modified contract required that lots 52, 55, and 143 would be paid for immediately, but the remaining lots would be paid for as sold. The court recognized that the parties agreed to pay Atom on a "per lot" basis for certain portions of the work. The court, however, found that the parties intended only that this arrangement provide a schedule for the timing of payments over the course of the contract, assuming the full completion of the contract by Atom in accordance with its terms. We agree.

We decide, as a matter of law, the meaning of a contract based on the meaning that would be attached to it by reasonable persons. *Gamble*, 136 N.H. at 13, 610 A.2d at 360. We therefore independently interpret the contract, using facts found by the trial court. *Merrimack School Dist.*, 140 N.H. at 11, 661 A.2d at 1198.

■ In determining the plaintiff's damages, the court held that the plaintiff was entitled to recover payment for all work executed. The court found that "it is the percentage of the work completed which serves as the measure of damages." A payment schedule is distinguishable from the methodology for calculating damages. The court did not deny the plaintiff payment for the lots; instead, it held that the parties intended the contractual language relating to the lots to provide a timetable for payment. Because the payment schedule does not necessarily reflect the amount of the contract completed, the court properly applied an accepted method of calculating damages. *See* J. CALAMARI & J. PERILLO, CONTRACTS § 14-28, at 632-33 (3d ed. 1987). The court concluded that the

parties did not intend the payment schedule to be a means of calculating damages.

The plaintiff finally asserts that the defendant's agent admitted that the defendant sustained no damages as a result of the plaintiff's breach. The plaintiff's brief fails, however, to point out where in the record such admission may be found. *See* SUP. CT. R. 16(9). We find the plaintiff's remaining arguments to be without merit and warranting no further review. *Vogel v. Vogel*, 137 N.H. 321, 322, 627 A.2d 595, 596 (1993).

*Affirmed in part; reversed in part; remanded.*

All concurred.