Hillsborough-northern judicial district
No. 98-522

THEODORE G.M. KLAR

v.

GEORGE MITOULAS & a.

December 8, 2000

*Thomas, Utell, Van De Water & Raiche, P.A.*, of Manchester (*Marc L. Van De Water* on the brief and orally), for the plaintiff.

*Wiggin & Nourie, P.A.*, of Manchester (*Thomas J. Pappas* and *Meredith P. Cook* on the brief, and *Mr. Pappas* orally), for the defendant Fleet Finance and Mortgage, Inc.

*Mark H. Campbell*, of Manchester, for defendant Christenson & Associates Mortgage Company, filed no brief.

*George Mitoulas, pro se*, filed no brief.

DALIANIS, J. The defendant, Fleet Finance and Mortgage, Inc. (Fleet), appeals from the Superior Court's (*Abramson,* J.) order finding it liable for breach of contract and awarding damages to the plaintiff, Theodore G.M. Klar, in the amount of $184,751.27. We affirm.

The following facts either appear in the record or are undisputed. In December 1988, the plaintiff sold property on Chestnut Street in Manchester to defendant George Mitoulas for $375,000. To finance the purchase, Mitoulas gave the plaintiff a promissory note in the principal amount of $337,500. The promissory note was secured by a first mortgage on the Chestnut Street property, a first mortgage on another Manchester property, and a third mortgage on yet another Manchester property. The terms of the promissory note called for seven years of monthly payments and a final balloon payment of all unpaid principal and interest due in December 1995.

The promissory note: (1) required Mitoulas to pay taxes and other assessments related to the premises securing the note; (2) provided that Mitoulas' failure to pay these assessments would be a breach of the note; and (3) provided that if any monthly payments were unpaid for more than thirty days, the entire outstanding principal and accrued interest would become due and payable at the plaintiff's discretion.

Under the note, Mitoulas agreed to keep all three mortgaged premises insured "in amounts not less than the principal due on the note secured thereby, and in no event . . . less than 80% of the insurable value." If Mitoulas failed to keep the premises so insured, the plaintiff had the right to obtain the requisite insurance and charge Mitoulas for the cost of so doing.

On August 14, 1989, the plaintiff entered into a partial purchase agreement with defendant Christenson and Associates Mortgage Company (Christenson) in which the plaintiff sold to Christenson the seventy-five remaining monthly payments due under the note and assigned the note and mortgage to Christenson. The agreement provided that the plaintiff retained the right to the final balloon payment.

In the agreement, Christenson promised to service the note and the mortgage and "exert reasonable collection efforts to insure that [Mitoulas made] timely payments due under said Note and Security Instrument." The agreement provided that if Mitoulas made all seventy-five monthly payments, Christenson would assign the note and mortgage back to the plaintiff.

The agreement also provided that if the note and mortgage were in default for thirty days, the plaintiff, "upon written notice of [the] default, shall have the opportunity to protect [his] retained ownership in the Note and Mortgage by repurchasing [Christenson]'s interest in [the] Note and Mortgage." If the plaintiff did not exercise this option within seventy-five days, Christenson agreed to foreclose on the note and mortgage.

On August 30, 1989, Christenson entered into a nearly identical partial purchase agreement with Fleet. Christenson sold the seventy-five payments and assigned the note and mortgage to Fleet. Fleet made many of the same promises to Christenson as Christenson had made to the plaintiff. Specifically, Fleet promised to service the note and mortgage and to "exert reasonable collection efforts to insure that [Mitoulas made] timely payments due under said Note and Security Instrument." Fleet also promised to assign the note and mortgage back to Christenson should Mitoulas make all seventy-five payments on the note.

Like the agreement between Christenson and the plaintiff, the agreement between Christenson and Fleet provided that if the note and mortgage were in default for thirty days, Christenson, upon written notice of the default, could protect its retained ownership of the note and mortgage by repurchasing Fleet's interest in them. If Christenson did not exercise this option within fifteen days, Fleet agreed to foreclose on the note and mortgage.

Sometime thereafter, the Chestnut Street property suffered a series of calamities. In June 1994, it was damaged by fire. Its sole tenant then vacated the premises, and the property was boarded up. Mitoulas never repaired the property, and it was again damaged by fire in September 1995. In December 1995, Mitoulas sold it for approximately $53,000.

The plaintiff sued Mitoulas, Christenson, and Fleet for breach of contract, among other claims. Fleet moved to dismiss the breach of contract claim on the ground that the plaintiff was not a party to the contract between Fleet and Christenson and could not sue for its breach. Christenson then assigned to the plaintiff its rights under the contract between it and Fleet, and Fleet withdrew its motion to dismiss. Following a bench trial, the court found that Fleet had

breached its agreement with Christenson and, accordingly, awarded damages to the plaintiff as Christenson's assignee. Fleet moved for reconsideration, which the court denied, and this appeal followed.

On appeal, Fleet contends that the trial court's findings of breach are erroneous as a matter of law and its damage award is improper. We first address Fleet's arguments concerning the trial court's findings of breach.

> The proper interpretation of a contract is ultimately a question of law for this court, and we will determine the meaning of the contract based on the meaning that would be attached to it by reasonable persons. Therefore, we will independently interpret the contract, using facts found by the trial court. Although we generally defer to the trial court's findings of fact, this rule does not apply where a finding is unsupported by the evidence or erroneous as a matter of law.

*Bezanson v. Hampshire Meadows Dev. Corp.*, 144 N.H. 298, 306-07, 742 A.2d 112, 120 (1999) (quotations, brackets, and citations omitted).

The trial court awarded damages for Fleet's failure to notify Christenson that: (1) before the first fire, Mitoulas reduced insurance coverage on the Chestnut Street property to less than $375,000; (2) after the first fire, the property was uninsured; (3) Mitoulas failed to pay his mortgage from June 1994 to September 1994; (4) Fleet used Mitoulas' insurance proceeds to pay itself the remaining monthly mortgage payments and a ten percent penalty; and (5) Mitoulas failed to pay property taxes between 1992 and 1994.

Because "failure to notify" was the sole basis upon which the court awarded damages, we do not address Fleet's arguments concerning other findings of breach. We also do not address Fleet's arguments concerning its use of the insurance proceeds because it concedes that the court properly awarded damages for this.

Fleet first argues that it had no duty to notify Christenson that Mitoulas reduced the insurance coverage on the property because this did not breach the promissory note. While we agree that the promissory note did not require Mitoulas to insure each property for $375,000, and that the trial court erred in so finding, we nonetheless affirm the trial court's ruling. *See Soper v. Purdy*, 144 N.H. 268, 271-72, 740 A.2d 1044, 1047 (1999).

The promissory note required Mitoulas to insure the Chestnut Street property in an amount not "less than 80% of the [property's]

insurable value." The trial court found that the property's insurable value was \$367,008 and that eighty percent of this value was \$293,606.40. The trial court also found that, at the time of the first fire, Mitoulas insured the property for \$230,000. These findings, amply supported by the record, were sufficient to establish breach of the promissory note. Fleet's remaining arguments on this issue lack merit and warrant no further discussion. *See Vogel v. Vogel*, 137 N.H. 321, 322, 627 A.2d 595, 596 (1993).

Fleet next argues that it had no duty to notify Christenson that the property was uninsured after the first fire because insuring the property was "impossible." We hold that the trial court's finding was not erroneous.

Mitoulas' insurance agent testified that it was "possible" for the mortgage holder to continue insurance coverage for the property. He also testified that one of the reasons that the insurer cancelled the policy was because the property was underinsured from the start. He testified that after the insurer cancelled the policy, it would have been "very difficult" to obtain another policy on the property. Although Fleet's representative testified that, in her opinion, nobody could have obtained insurance on the property after the first fire, the trial court was free to accept or reject this testimony. *See Crown Paper Co. v. City of Berlin*, 142 N.H. 563, 570, 703 A.2d 1387, 1391 (1997).

We now turn to the trial court's damages award. "On review, we consider the evidence in the light most favorable to the prevailing party below, and will overturn a damage award only if we find it to be clearly erroneous." *Touma v. St. Mary's Bank*, 142 N.H. 762, 766, 712 A.2d 619, 622 (1998) (quotation and brackets omitted).

The court ruled that, as Christenson's assignee, the plaintiff was entitled to "the loss that Christenson . . . suffered as a result of [Fleet]'s failure to provide timely notice." It awarded the plaintiff the following: (1) the remainder of the insurance proceeds which Fleet had retained; (2) the prepayment penalty that Fleet paid itself from the insurance proceeds; (3) the money that the insurer retained after Mitoulas failed to repair the property; (4) the interest and penalty that the plaintiff paid on Mitoulas' past due real estate taxes; and (5) the difference between the actual cash value of the property after the first fire and the value for which the property actually sold.

Fleet assigns two errors to the award. It first contends that the court erred by awarding certain damages to the plaintiff in his individual capacity, rather than as Christenson's assignee. We disagree.

Fleet asserts that the court awarded the following to the plaintiff in his individual capacity: (1) the money retained by the insurance company because Mitoulas failed to repair the property; (2) the interest and penalty that the plaintiff paid on Mitoulas' past due property taxes; and (3) the difference between the property's actual cash value and its value when it eventually sold. Fleet argues that "Christenson never could have recovered [these] amount[s] against [Fleet] because Christenson did not retain any interest in the Note's balloon payment."

Fleet confuses Christenson's interest in the note and mortgage with its entitlement to receive payments under them. In the partial purchase agreement between Christenson and the plaintiff, Christenson purchased the right to receive and keep the seventy-five monthly payments, and the plaintiff had the right to receive and keep the balloon payment. The plaintiff, however, assigned the entire note and mortgage to Christenson. Christenson thus had a duty to protect the note and mortgage *in their entirety*.

In the partial purchase agreement between Christenson and Fleet, Fleet purchased the right to the seventy-five monthly payments, but as Christenson's assignee, had a duty to protect the entire note and mortgage. When Fleet breached its agreement with Christenson, impairing the value of the note and mortgage, Christenson was entitled to all damages from that breach. The plaintiff became entitled to these same damages because Christenson assigned to the plaintiff its rights under the agreement with Fleet. Accordingly, the trial court's award, giving the plaintiff all damages that flowed from Fleet's breach, was correct.

Fleet next faults the trial court for calculating the actual cash value of the property based upon an insurance adjuster's testimony. Fleet, however, has failed to preserve this issue for our review on appeal.

Generally, "a defendant must make a specific and contemporaneous objection during trial to preserve an issue for appellate review." *State v. Hoag*, 145 N.H. 47, 52, 749 A.2d 331, 334 (2000). The record shows that during the insurance adjuster's testimony, Fleet objected only to potential testimony about the fair market value of the property, not to testimony about the property's actual cash value. Nor did it object to the insurance adjuster's exhibit demonstrating how he calculated the property's actual cash value.

Fleet asserts that it raised this issue in a motion *in limine*.

A motion *in limine* is sufficient to preserve an issue for appeal without an objection at trial if the trial court

> definitively rules on the issue prior to trial. A ruling on a motion *in limine* is definitive when the court is sufficiently alerted to the issue and the court's written order demonstrates that it considered the issue and ruled on it.

*Id.* at 52, 749 A.2d at 334-35 (citation omitted). Fleet has not demonstrated that it objected to the adjuster's testimony on the property's actual cash value in its motion *in limine*, or that the court considered this objection. Moreover, the court's order indicates that this issue was resolved by agreement between the parties, and the record suggests that the adjuster's testimony complied with this agreement. Because we cannot say that the trial court issued a definitive pretrial ruling on this issue, Fleet's argument is not preserved for our review. *See id.* at 52, 749 A.2d at 335.

*Affirmed.*

BRODERICK and NADEAU, JJ., concurred; GROFF, J., superior court justice, specially assigned under RSA 490:3, concurred.