Strafford
No. 98-460

NORMA BELL

v.

LIBERTY MUTUAL INSURANCE COMPANY

March 26, 2001

*Burns, Bryant, Hinchey, Cox & Rockefeller, P.A.*, of Dover (*Paul R. Cox* and *Matthew B. Cox* on the brief, and *Paul R. Cox* orally), for the plaintiff.

*Sulloway & Hollis, P.L.L.C.*, of Concord (*Margaret H. Nelson* and *Sarah S. Murdough* on the brief, and *Ms. Nelson* orally), for the defendant.

HORTON, J., retired, specially assigned under RSA 490:3. The plaintiff, Norma Bell, appeals the Superior Court's (*Mohl*, J.) order on her petition for the award of damages against the defendant, Liberty Mutual Insurance Company. We affirm.

The following facts were recited by the trial court as alleged by the plaintiff, or appear in the record before us. On December 29, 1992, the plaintiff was injured in an automobile accident with an uninsured driver. The plaintiff was insured by the defendant under a policy with $100,000 of uninsured motorist coverage. The plaintiff filed a claim for uninsured motorist benefits on January 27, 1995. The plaintiff alleged that after repeated unsuccessful requests to the defendant to arbitrate her claim, she was forced to file, on April 3, 1996, a petition for specific performance to compel the defendant to arbitrate under her policy's arbitration provision. The defendant failed to file a timely appearance and was defaulted on June 26, 1996. The trial court continued the case for judgment and ordered the plaintiff to file a proposed decree. As the defendant failed to respond to the plaintiff's proposed decree, it was approved by the superior court and judgment was entered *pro confesso* for the plaintiff on August 6, 1996 (the *pro confesso* decree).

The *pro confesso* decree appointed two arbitrators and directed them to select a third and hold an arbitration hearing. The order held that "[d]ue to the defendant's conduct in this matter, the only issue before the Arbitration Panel shall be the full, fair and adequate damages sustained by the plaintiff as a result of the automobile accident of December 29, 1992." The court also ordered that "[t]he plaintiff shall be awarded interest on the Arbitration Award from the date the Arbitration Panel finds that the defendant . . . received its first request for arbitration." The court also directed the panel to award the plaintiff costs and ordered the defendant to pay the arbitration panel's fees. Finally, the court retained jurisdiction to entertain requests by the plaintiff for further relief after the arbitration award. The defendant's motion for reconsideration and modification of the *pro confesso* decree was denied.

On December 14, 1996, the arbitration panel awarded damages of $250,000 for the plaintiff's injuries in the automobile accident. The panel recognized the policy's limit of $100,000 per injury, but awarded full damages pursuant to the court's *pro confesso* decree,

"reserving to the parties all issues arising therefrom." The panel did not award interest or costs, or make a finding as to the date arbitration was first demanded, based on representations that counsel would try to resolve those issues or resubmit them to the panel later.

The defendant moved to vacate the arbitration award. The court denied the motion in part and granted it in part, ruling that the extent of the defendant's liability was the policy limit of $100,000, which the defendant had already paid to the plaintiff.

On July 31, 1997, the plaintiff filed a specification and petition for the award of damages. She sought: (1) the remainder of the arbitration award in excess of $100,000; (2) interest from September 15, 1995, which she represented was the date formal demand for arbitration was made; (3) attorney's fees and costs; and (4) actual, double or treble damages pursuant to RSA 358-A:10 (1995). The defendant objected to the scope of the damages sought.

The trial court held that the plaintiff was not entitled to recover damages in excess of the policy limit. The court construed the plaintiff's earlier petition for specific performance as alleging claims under the unfair insurance trade practices statute, see RSA ch. 417; under the Consumer Protection Act, see RSA ch. 358-A; and for bad faith breach of contract, see Jarvis v. Prudential Ins. Co., 122 N.H. 648 (1982). The court ruled that: (1) the plaintiff could not bring a private cause of action under RSA chapter 417 because there had not first been a finding of a violation or a cease and desist order by the insurance commissioner; (2) the plaintiff's consumer protection claim failed because the defendant's alleged unfair conduct did not meet the "rascality" test of Barrows v. Boles, 141 N.H. 382 (1996); and (3) the plaintiff could not recover for bad faith breach of insurance contract because the court found that the defendant had not acted unreasonably and for calculated gain, and because the record did not support an award of Jarvis damages. The court awarded the plaintiff interest on the $100,000 policy limit from March 1, 1996, to the date the defendant paid the policy limit to the plaintiff.

On appeal, the plaintiff argues that the trial court erred in: (1) failing to find that a violation of the unfair insurance trade practices statute establishes a violation of the Consumer Protection Act; (2) finding that the defendant was not liable for bad faith; (3) holding that the plaintiff's demand for arbitration was not effective until it was "hostile"; and (4) failing to find that the facts in the plaintiff's petition conclusively established wrongful conduct under the theories alleged in the petition.

The plaintiff's first argument raises the threshold issue of whether the Consumer Protection Act applies to the insurance industry. The defendant contends that insurance transactions fall under RSA 358-A:3, I (Supp. 2000), which exempts from the Consumer Protection Act "[t]rade or commerce otherwise permitted under laws as administered by any regulatory board or officer acting under statutory authority of this state or of the United States." We agree.

■ In *Averill v. Cox*, 145 N.H. 328, 331-32 (2000), we resolved a conflict in our case law over the interpretation of RSA 358-A:3, I, reaffirming *Rousseau v. Eshelman*, 128 N.H. 564 (1986). We held that the exemption analysis under RSA 358-A:3, I, "focuses on whether a trade or commerce is subject to a regulatory board or officer authorized by statute." *Averill*, 145 N.H. at 331-32. We noted, however:

> [S]uch regulation must be comprehensive to fall within the purview of RSA 358-A:3, I. Mere licensing requirements, approval of plans or declarations, limited trade provisions, and consumer protection prohibitions would not qualify for protection under the so-called statutory exemption. Further, trade or commerce qualifies for protection only if it is governed by a statutorily authorized regulatory regime that protects consumers from the same deception, fraud, and unfair trade practices as intended by RSA chapter 358-A.

*Id.* at 332-33 (quotation and citation omitted).

The statutes regulating insurance in this State comprise Title XXXVII of the Revised Statutes Annotated, chapters 400-A through 420-J. Included therein is RSA chapter 417, entitled "Unfair Insurance Trade Practices," the stated purpose of which is "to regulate trade practices in the business of insurance, . . . by defining or providing for the determination of all such practices which constitute in this state unfair methods of competition or unfair or deceptive acts or practices and by prohibiting the trade practices so defined or determined." RSA 417:1 (1998). Chapter 417 empowers the insurance commissioner to investigate insurers to determine whether they have engaged in any unfair insurance trade practice, *see* RSA 417:5 (1998); to conduct hearings regarding any such suspected practice, *see* RSA 417:6, :12 (1998); and to impose an administrative penalty on, or "suspend, revoke or refuse to renew the license of," any insurer who has engaged in a practice prohibited

by RSA chapter 417, *see* RSA 417:10 (1998), or violated a cease and desist order issued by the commissioner, *see* RSA 417:12, :13 (1998). Chapter 417 also permits a consumer adversely affected by a practice found by the commissioner to have violated the chapter to bring a private action for damages against the insurer. *See* RSA 417:19 (1998).

■ We conclude that the regulation of the insurance industry "is comprehensive and protects consumers from the same fraud and unfair practices as RSA chapter 358-A." *Averill*, 145 N.H. at 333. We therefore hold that the insurance trade is exempt from the Consumer Protection Act pursuant to RSA 358-A:3, I.

The plaintiff next argues that she was entitled to damages for bad faith breach of contract. She argues that the trial court erred both in failing to find bad faith and in finding that she had failed to prove damages. We need only address the latter argument as a failure to prove damages is fatal to the plaintiff's claim. *See Bailey v. Sommovigo*, 137 N.H. 526, 531 (1993).

■ In an action for breach of an insurer's duty to settle a first-party claim, "[t]he insured may recover specific consequential damages if he can prove that such damages were reasonably foreseeable by the insurance company and that he could not have reasonably avoided or mitigated such damages." *Jarvis*, 122 N.H. at 653. In addition, as consequential damages are "losses that flow from a breach of contract," *Drop Anchor Realty Trust v. Hartford Fire Ins. Co.*, 126 N.H. 674, 678 (1985), the plaintiff must prove that her damages were sustained as a result of the defendant's breach. *See id.* at 679.

■ The plaintiff submitted an affidavit detailing her damages allegedly caused by the defendant's breach. These included taking an inferior job following a downsizing by her former employer; withdrawing retirement funds; her inability and her daughter's inability to pursue additional education; her inability to make home improvements; and "personal anguish and upset." The trial court ruled that these alleged damages were not recoverable, based in part on the plaintiff's failure to prove causation. The court concluded that the plaintiff's "affidavit describes hardships occasioned by her layoff, which was a result of employer 'downsizing,' not defendant's conduct." We agree and therefore uphold the trial court's determination. We also uphold the trial court's ruling that the plaintiff could not recover damages for emotional distress and mental suffering. *See Jarvis*, 122 N.H. at 654.

■ The plaintiff also argues that if the trial court did not award damages based on her affidavit, it should have "set the matter down for a full trial with presentation of witnesses, etc." We find no error. The plaintiff submitted her evidence of damages in affidavit form, stating that "the Plaintiff is hopeful that the Court has sufficient data before it to proceed with an award; however, if this is not the case, the Plaintiff is prepared to follow the Court's direction for further proceedings so that she may fully present to the Court her claims as stated herein." Following the trial court's order, the plaintiff moved for reconsideration. Although the plaintiff generally requested the court to schedule a hearing "due to the importance of this case," she neither indicated that she sought an evidentiary hearing nor challenged the court's findings on proof of damages. Therefore, the issue of whether the trial court erred in failing to hear further evidence was not preserved for our review. *See State v. Wilkinson*, 136 N.H. 170, 178 (1992). We also decline the plaintiff's invitation to overrule *Lawton v. Great Southwest Fire Ins. Co.*, 118 N.H. 607 (1978), and recognize a tort claim for bad faith delay or refusal to settle a first-party insurance claim. *See Lawton*, 118 N.H. at 614.

The plaintiff next challenges the trial court's award of interest, arguing that the court erred in ruling that her demand for arbitration had to be "hostile" in order to be effective. We disagree with the plaintiff's characterization of the trial court's ruling. Although the trial court noted that the tone of the plaintiff's March 1 letter was, in contrast to that of prior communications, "hostile," the court interpreted the *pro confesso* decree "as requiring a demand in earnest" not a hostile demand. Nevertheless, in either case, "[t]he interpretation thus placed by the superior court upon its own order raises no question of law for us to consider." *Lear v. Brodeur*, 84 N.H. 549, 550 (1931).

The trial court found that "[t]he evidence demonstrates that plaintiff did not seriously demand arbitration until March 1, 1996." The court noted that the plaintiff "purported to demand arbitration on September 15, 1995, but cited a potential statute of limitations problem as the reason for her demand." The court found that in subsequent communications with the defendant, the plaintiff expressed a desire to settle the case prior to arbitration and promised to forward medical records relating to ongoing treatment. The court further found that in a February 16, 1996 letter to the defendant, the plaintiff "indicated that her medical record submissions were finally complete" and stated that she wanted to hear from the defendant within two weeks regarding settlement or she would have

to begin arbitration proceedings. The trial court found that "[t]his ultimatum shows that arbitration had not yet been demanded in earnest."

In contrast, the plaintiff's March 1, 1996 letter noted that she had previously sent the defendant a demand letter outlining her case and had provided the defendant with recent medical records and bills. "Thus," the letter stated, "you have everything you need to deal with this claim NOW and it's essential that you do so." The letter noted that if the parties could not agree on settlement, the defendant's "immediate cooperation in igniting the arbitration process to determine the damages" was required. We conclude that the trial court did not err in finding that the plaintiff's first demand for arbitration, for purposes of calculating interest awarded in the *pro confesso* decree, did not occur until March 1, 1996.

The plaintiff nevertheless argues that she and the defendant agreed that her September 15, 1995 letter initiated arbitration. Although the trial court made no specific finding on this issue, it noted that it "simply disagree[d] with plaintiff's factual and legal interpretations." "[I]n the absence of specific findings, a court is presumed to have made all findings necessary to support its decree." *Demers Nursing Home, Inc. v. R.C. Foss & Son, Inc.*, 122 N.H. 757, 761 (1982) (quotation omitted). We therefore presume that the court found no agreement had been reached. The record, which reveals a series of dueling correspondences between the parties' counsel on this issue, amply supports this finding.

■ Finally, the plaintiff argues that the facts pleaded in her petition for specific performance, taken *pro confesso*, conclusively established wrongful conduct under the theories alleged in the petition. "A *pro confesso* decree admits only the material and well-pleaded allegations of fact, not conclusions of law. . . . Neither a verdict nor a judgment, it is an interlocutory finding which forms the basis for the *later entry of judgment upon proof of right and amount*." *O'Brien v. Continental Ins. Co.*, 141 N.H. 522, 524-25 (1996) (quotation and citation omitted). "Thus, it still remains for the trial court to determine the validity of the underlying legal claim . . . ." *Id.* at 525. Here, the trial court found that the plaintiff's first claim, under the unfair insurance trade practices statute, failed as a matter of law, which the plaintiff does not challenge on appeal. We have held that the plaintiff's second claim, under the Consumer Protection Act, also fails as a matter of law. Such determinations of legal viability are not inconsistent with a prior *pro confesso* decree. *See id.* We also note that no facts regarding damages caused by the

defendant's alleged breach of contract were pleaded in the plaintiff's petition. Thus, the plaintiff's bad faith claim could not be sustained on the facts taken *pro confesso* alone.

*Affirmed.*

THAYER, J., sat for oral argument but resigned prior to the final vote; BROCK, C.J., and BRODERICK, J., concurred.