Merrimack
No. 80-186

ANDREA F. STEEL

v.

GEORGE G. BEMIS, JR., M.D.

May 27, 1981

*McSwiney, Jones & Semple,* of Concord (*Carroll F. Jones* on the brief and orally), for the plaintiff.

*Bell, Falk & Norton,* of Keene (*Ernest L. Bell, III,* on the brief and orally), for the defendant.

BROCK, J.   This is a medical malpractice action in which the plaintiff, Andrea F. Steel, brought suit against the defendant, George G. Bemis, Jr., M.D., to recover damages for the pain and suffering she endured as a result of the defendant's mistaken diagnosis that a partial miscarriage was a complete miscarriage. Trial before a jury in the Merrimack County Superior Court (*Temple,* J.) resulted in a verdict for the plaintiff in the amount of $50,000. The defendant, having taken a number of exceptions during trial and having excepted to the trial court's denial of his post-verdict motion for an order of remittitur, filed a notice of appeal in this court. We affirm.

On September 2, 1976, the plaintiff was tested for pregnancy and the results were positive. She then made an appointment with the defendant, a certified obstetrician-gynecologist, for September 20. On September 19, however, the plaintiff, who is a registered nurse, passed a piece of tissue. She took the necessary steps to preserve the tissue and brought it to the defendant's office the next day, the day of her scheduled appointment. Upon observing the specimen in his office, the defendant's diagnosis was that the pregnancy had completely aborted. No further examination of the specimen was undertaken, nor did the defendant send it to a laboratory for pathological examination.

Throughout the following week, the plaintiff experienced varying degrees of pain in her abdomen. When the pain first developed it was extreme, and the plaintiff's husband telephoned the defendant, who assured him that the pain was normal and incident to her uterus contracting back to its original shape and position. The defendant prescribed bed rest and aspirin. Following this recommendation, the plaintiff's pain subsided.

On the afternoon of September 25, however, the plaintiff once again experienced severe pain. The pain was so excruciating that she could not use the telephone and had to rely on her four-year-old daughter to summon her husband. He immediately contacted the doctor, who again reassured him that the pain was normal and to be expected. As the day progressed, the plaintiff's condition steadily worsened. At approximately 10:00 p.m. the doctor was telephoned again and informed of the plaintiff's severe pain. Bed rest and aspirin again were prescribed by the defendant.

Finally, at 1:30 a.m. on September 26, the plaintiff's husband again telephoned the defendant and told him that his wife could not speak above a whisper due to the intense pain, was paler than at any other time, and was soaking wet with perspiration. The doctor, who had not even seen the plaintiff, restated that such symptoms were a normal sequel to a miscarriage and repeated his advice of bed rest and aspirin. At this time, however, the plaintiff demanded that her husband call for an ambulance to get her to the hospital.

Upon her arrival at the hospital emergency room, the plaintiff's condition was recognized as being very serious. Indeed, the doctor on duty considered her to be in a "life-endangered" situation. An emergency operation was performed and 1000 cubic centimeters of blood were removed from the plaintiff's peritoneal cavity. It was determined that this accumulation of blood was due to the fact that the plaintiff had suffered a ruptured ectopic pregnancy, a condition that the defendant had failed to diagnose correctly.

At trial, the plaintiff presented expert testimony to establish that the defendant was negligent in providing medical treatment to her by failing to have the tissue specimen submitted for laboratory examination, failing to perform a bimanual examination of the plaintiff, and failing to request or arrange for a physical examination of the plaintiff on each of the four occasions that he was telephoned concerning her pain. Moreover, the attending physicians at the hospital testified that the plaintiff was near death when she arrived at the hospital.

After evaluating all of the evidence presented at trial, the jury awarded the plaintiff $50,000 for the pain and suffering that she had endured during the period between the defendant's misdiagnoses of the ectopic pregnancy and the emergency operation that was performed on the plaintiff.

On this appeal, the defendant raises a litany of eight arguments which he contends compels reversal of the trial court and an order for a new trial. We have considered all of the defendant's arguments but deem only two of them as having sufficient legal merit to warrant discussion. These are the defendant's claim that the trial court should have instructed the jury to consider the fact that the plaintiff is a registered nurse in determining whether, and if so to what degree, the plaintiff herself may have been negligent, and his claim that the amount of the verdict is excessive.

■ Relevant to the defendant's first argument is the court's remark in the presence of the jury and in response to an objection made by the defendant that "the fact that Mrs. Steel is a regis-

tered nurse does not affect her duty . . . she is not held to a different standard than someone who is not a nurse." The defendant excepted to this remark, arguing that it unduly prejudiced him because he had planned to proceed with a defense based upon comparative negligence (RSA 507:7-a (Supp. 1979)). The defendant makes the same argument on appeal, but our review of the transcript indicates that the trial court, in fact, instructed the jury to consider any negligence of the plaintiff in reaching its verdict. The trial court fully and correctly instructed the jury on the doctrine of comparative negligence, and the defendant neither objected nor excepted to the trial court's charge to the jury. Under these circumstances the defendant cannot now question any aspect of that charge. *State v. Cass*, 121 N.H. 81, 82, 427 A.2d 1, 2 (1981). Any arguments that the defendant may now have concerning the accuracy of the charge to the jury and whether it was misleading or confusing as to the applicable law are therefore deemed waived. *See State v. Bean*, 120 N.H. 946, 949, 424 A.2d 414, 416 (1980); *State v. Carroll*, 120 N.H. 458, 461, 417 A.2d 8, 10 (1980).

■ We next consider whether the $50,000 verdict was excessive. Our task upon review is not to attempt to ascertain or divine the one and only correct verdict. No one to our knowledge has been able to devise a formula by which compensation for pain and suffering can be determined with precision. Pain and suffering are too subjective to lend themselves to such exactness. Consequently, "[w]e do not permit any formula or mathematical tool to be used in computing such damages." *Carson v. Maurer*, 120 N.H. 925, 942, 424 A.2d 825, 837 (1980). Accordingly, we must rely heavily upon the jury and the trial court, who hear the testimony and weigh the facts, to reach a just result in such cases.

■■ We are mindful that jurors can become unduly sympathetic toward or prejudiced against a particular party or can even rely on improper considerations in reaching their verdict. The trial judge, however, who also observes the witnesses, hears their testimony and sees all the evidence presented, provides a safeguard against such occurrences by entertaining motions for remittitur or additur. *Reid v. Spadone Mach. Co.*, 119 N.H. 457, 466, 404 A.2d 1094, 1100 (1979). We will not set aside the trial court's decision not to order remittitur or set aside a verdict unless we conclude that the verdict is "so *manifestly* exorbitant that *no* reasonable person could say that the jury was not influenced by partiality or prejudice, or misled by some mistaken view of the merits of the case." *Seaman v. Berry*, 114 N.H. 474, 475–76, 322 A.2d 922, 923

(1974) (emphasis added) (quoting *Champion v. Smith*, 113 N.H. 551, 552, 311 A.2d 132, 133 (1973)). In other words, in order to hold that a verdict is excessive "we [must] conclude that no reasonable person could have returned such a verdict." *Pleasant Valley Campground v. Rood*, 120 N.H. 86, 90, 411 A.2d 1104, 1106 (1980). While we might not have awarded the same amount of damages had we been the fact-finder in this case, we cannot say that *no* reasonable person could have reached such a result. *Cf. Reid v. Spadone Mach. Co.*, 119 N.H. at 466, 404 A.2d at 1099–1100.

*Affirmed.*

GRIMES, C.J., dissented; the others concurred.

GRIMES, C.J., dissenting: I cannot agree that the verdict in this case is not excessive and therefore must respectfully dissent.