Rockingham
No. 84-286
No. 84-323

MARSHA BRANN, ADMINISTRATRIX OF THE ESTATE OF
ROBERT E. BRANN, AND MARSHA BRANN, INDIVIDUALLY

v.

EXETER CLINIC, INC.

AND

KARL L. SINGER, M.D.

August 15, 1985

*Brown and Nixon P.A.*, of Manchester (*Randolph J. Reis & a.* on the brief, and *Francis G. Murphy, Jr.*, orally), for the plaintiff.

*Sulloway, Hollis & Soden*, of Concord (*Robert M. Larsen* and *Irving H. Soden* on the brief, and *Mr. Larsen* orally), for the defendants.

BROCK, J. This case involves two actions arising from the same event. The first is a wrongful death action for medical malpractice brought by the plaintiff Marsha Brann in her capacity as administratrix of the estate of her husband, Robert Brann (decedent). The plaintiff claims that the defendants, Dr. Karl Singer and the Exeter Clinic, Inc. (defendants), and Dr. Dennis Carlson (Carlson) failed to properly evaluate a mole which later became malignant. The plaintiff in her individual capacity also sued for loss of consortium under RSA 507:8-a. The trial resulted in a special verdict for the defendants in the wrongful death action in which the jury found that Carlson was 0% negligent, the defendants 49% negligent, and the decedent 51% negligent. On the consortium claim, the jury awarded the plaintiff three hundred thousand dollars ($300,000).

The plaintiff appeals the special verdict, alleging that the Superior Court (*Temple*, J.) erred both in instructing the jury on the issue of comparative negligence and in failing to set aside or reduce the finding of comparative negligence, absent more than a scintilla of evidence on the issue.

The defendants filed a cross-appeal, arguing that the plaintiff's loss of consortium claim should have been withdrawn from the jury and that the verdict for damages was excessive. For the reasons that follow, we reverse the verdict in the wrongful death action and uphold the verdict in the consortium action.

In September 1978, the decedent visited the office of Dr. Karl Singer, complaining of back problems and depression resulting from a job related injury which had occurred in January 1977. Dr. Singer's examination revealed a "pigmented lesion" on the right upper back. Suspecting that the mole might be a form of cancer called "superficial spreading melanoma," Dr. Singer did a biopsy of the lesion, but did not remove the mole completely. He submitted the tissue to Dr. Carlson for analysis and the mole was found to be benign.

In June of 1980, the mole began to swell and bleed. The decedent consulted Dr. Edmund Piper on August 28, 1980. Dr. Piper com-

pletely excised the mole, performed a biopsy and diagnosed it as "malignant melanoma."

During the next twenty months, the melanoma spread to other parts of the decedent's body. He submitted to surgery, chemotherapy, radiation, special diets and other treatments. He also sought out faith healers in Massachusetts and the Philippines in an attempt to cure the disease. After becoming emaciated by the effects of the malignancy, Robert Brann died in April of 1982.

At trial, the evidence on the issue of negligence focused on whether Dr. Singer should have excised all of the decedent's mole in 1978 (an "excisional biopsy"), instead of only a portion of it (a "punch biopsy"). At no time, either in the pleadings or during the trial, did the defendants allege that the decedent had been contributorily negligent.

Until the court instructed the jury, the only mention of comparative negligence came in the pretrial statement of Dr. Carlson (who is not involved in this appeal), viz.: "Comparative negligence is reserved as a defense pending testimony and evidence at trial." Neither Dr. Carlson nor the defendants here requested a jury instruction on the issue.

The only evidence at trial from which causal contributory negligence on the part of the decedent might be inferred was a suggestion made by one expert that the decedent's cancer was a type that may develop very rapidly, together with a series of general statements to the effect that any melanoma must be discovered and removed early "if there is to be any hope of a cure."

Nevertheless, the trial court instructed the jury on the issue of comparative negligence, *see* RSA 507:7-a, and the jury returned the special verdict described above. The plaintiff objected to the jury instruction on the ground that there had been insufficient evidence of causal negligence by the decedent to warrant such an instruction. Her objection was overruled, and an exception noted.

On appeal the plaintiff argues that the instruction was improper on several grounds. The only timely objection to the instruction, however, involved the sufficiency of the evidence. That is, accordingly, the only ground properly preserved for appeal. *Proctor v. Bank of N.H.*, 123 N.H. 395, 402, 464 A.2d 263, 267 (1983).

■ We agree that in this case there was insufficient evidence of causal negligence on the part of the decedent to warrant a jury instruction. The test is "whether the evidence [supporting causal negligence] . . . might reasonably and properly lead the jury, in the absence of any explanatory or rebutting evidence, to conclude that the allegation of negligence is sustained." *Paine v. Railway*, 58 N.H. 611, 614 (1879).

In this case, the question was, first, whether the decedent's delay in consulting a doctor in 1980 was negligent; and second, whether that delay was in some measure a cause of his death. We need not discuss the first question, because the latter question is plainly beyond the knowledge and experience of a lay jury; it requires the application of special experience and training. *Michael v. Roberts*, 91 N.H. 499, 501, 23 A.2d 361, 362 (1941). In such cases, where there is no expert testimony that could support an inference of causal negligence, there is no issue for the jury. "Otherwise the jury would be deciding the case on conjecture rather than reason." *Jutras v. Satters*, 96 N.H. 300, 302, 75 A.2d 712, 713 (1950).

■ There is no expert testimony in the record from which a jury could reasonably infer that it was more likely than not that the decedent's delay in seeking treatment caused his death. *Cf. Carson v. Maurer*, 120 N.H. 925, 934, 424 A.2d 825, 832 (1980) ("in the area of medical malpractice, matters relating to . . . proximate cause must generally be established by expert testimony"). None of the expert witnesses testified as to the likelihood that the decedent's cancer would have taken a different course if he had consulted a doctor in June or July of 1980, rather than in late August. The general statements referred to above, about the need for early discovery and treatment, could not give a lay jury a sufficient basis for a reasonable finding of causal negligence; the jury could only speculate as to how those statements might be applied to the facts of this case. We accordingly hold that the jury should not have been instructed on the issue of comparative negligence.

■ We note in passing that courts should be reluctant to instruct juries on comparative negligence when the issue has not been pleaded or argued at trial, and when no instruction has been requested. The comparative negligence statute reads in pertinent part: "The burden of proof as to the existence or amount of causal negligence alleged to be attributable to a party shall rest upon the party making such allegation." RSA 507:7-a.

■■ This does not necessarily mean that a defendant alleging contributory negligence must *introduce* evidence to that effect; sometimes the plaintiff's own evidence will be sufficient to establish negligence on his or her part. RESTATEMENT (SECOND) OF TORTS § 477, comment a (1965). The statute clearly implies, however, that a defendant who seeks to prove negligence should first *allege* it by formal pleading or pretrial statement under Superior Court Rule 62.

■ Such a rule is in keeping with the general principle of pleading laid down by this court in 1950: "Pleadings ought to be simple,

concise and indicate the theory on which the plaintiff [or defendant] is proceeding so that the opposing party can adequately defend." *Morency v. Plourde*, 96 N.H. 344, 345–46, 76 A.2d 791, 792 (1950); *see also Fortier v. Stone*, 79 N.H. 235, 239–40, 107 A. 342, 343–44 (1919) (in assault case, jury instruction on self-defense should not have been given where defendant had relied exclusively on a defense of accident); *cf. Clinical Lab Prod's Inc. v. Martina*, 121 N.H. 989, 990–91, 437 A.2d 285, 286 (1981) ("it was error for the court to award damages on a claim not presented by the pleadings and not otherwise referred to by either party").

At least one court has held that contributory negligence cannot be proved unless it is first pleaded. *Schrage v. Miller*, 123 Neb. 266, 276–77, 242 N.W. 649, 653 (1932). Various commentators have made the same point regarding comparative negligence. *See, e.g.*, Note, *Comparative Negligence as an Affirmative Defense*, 70 IOWA L.R. 693, 702–07 (1985); C. R. HEFT & C. J. HEFT, COMPARATIVE NEGLI-GENCE MANUAL § 5.30, at 4 (1978); R. CONASON, 7 DAMAGES IN TORT ACTIONS § 71.12 (looseleaf, 1982–85); AM JUR. 2d NEW TOPIC SERV-ICE, *Comparative Negligence* § 45 (1977).

■ Of course, a plaintiff cannot claim unfair surprise when con-tributory negligence is revealed by his or her own evidence. In such cases, the defendant's proper course is to move for an amendment of the pleadings, which by law "may be permitted in any action, in any stage of the proceedings, . . . when it shall appear to the court that it is necessary for the prevention of injustice . . . ." RSA 514:9; *see Mayhew v. New England Teamsters*, 115 N.H. 581, 584, 347 A.2d 610, 612 (1975); *LePage v. Company*, 97 N.H. 46, 50, 80 A.2d 148, 152 (1951); *cf. Clinical Lab Prod's supra.*

The defendants, in their cross-appeal, first argue that the dam-ages awarded in the plaintiff's consortium case should be barred or limited by the negligence of the decedent. They contend that consor-tium is fundamentally a derivative claim and that a consortium verdict should be consistent with the verdict in the negligence action. We disagree.

■ The view that an action for loss of consortium is a "deriva-tive" claim has been rejected by the commentators, although accepted by some courts. *Macon v. Seaward Const. Co., Inc.*, 555 F.2d 1, 2 (1st Cir. 1977); *Feltch v. General Rental Co.*, 383 Mass. 603, 607, 421 N.E.2d 67, 70 (1981). This court removed all doubt that we view a loss of consortium claim as "separate and distinct and not derivative" in *Reid v. Spadone Mach. Co.*, 119 N.H. 198, 199, 400 A.2d 54, 55 (1979). Therefore, the plaintiff's loss of consortium action will not be barred or reduced by a verdict rendered against the plaintiff in a negligence action.

Secondly, the defendants argue that the trial court erred in failing to grant the defendants' motion for non-suit and directed verdict in the consortium case, on the theory that there was no evidence in the record to support a claim for loss of consortium.

 This court has defined consortium to include three elements—service, society and sexual intercourse, *Guevin v. Railroad*, 78 N.H. 289, 294 (1916); however, loss of consortium is not dependent upon proving loss of service, and any substantial injury to the marital right is actionable. *Id.* at 300. In addition, the extent of the decedent's injuries is relevant to the issue. *LaBonte v. National Gypsum Co.*, 113 N.H. 678, 681, 313 A.2d 403, 406 (1973).

 The evidence in this case clearly supports a verdict for the plaintiff for loss of consortium. Marsha Brann testified that she fully shared her husband's ordeal and that she took care of him both physically and emotionally in the twenty months before his death. Her testimony also indicated that her husband was frequently incapacitated by hospitalization or severe pain. He lost a significant amount of weight and was often physically ill from the side effects of chemotherapy and radiation treatments. While there was some testimony that the decedent tried to keep a positive, good humored attitude until the final days of his life, the decedent's noble efforts should not be interpreted as meaning that his wife did not on the whole suffer the loss of his companionship. The testimony was sufficient for the jury to find that the marital relations of Marsha and Robert Brann were severely affected and limited by his illness.

 Finally, the defendants claim that the jury verdict of three hundred thousand dollars ($300,000) in the loss of consortium claim is excessive. Damages for loss of consortium cannot be determined with mathematical certainty because the elements of this claim, such as love, companionship, etc., are subjective. *Id.*

 The court will not set aside the trial court's decision not to order remittitur unless the verdict is "manifestly exorbitant and . . . no reasonable person could say the jury was not misled or mistaken." *Steel v. Bemis*, 121 N.H. 425, 428, 431 A.2d 113, 116 (1981). Even if this court would not have awarded such an amount, we will not set aside the verdict unless "no reasonable person could have reached such a result." *Id.* at 429, 431 A.2d at 116. We cannot say that such was the case here.

> *Reversed in part; affirmed in part.*

KING, C.J., did not sit; the others concurred.