Hillsborough-northern judicial district
No. 97-087

EDWARD AND JOYCE BENNETT

v.

DAVID LEMBO

October 5, 2000

*Thomas Craig, P.A.*, of Manchester (*Thomas Craig* and *James E. Fiest* on the brief, and *Mr. Craig* orally), for the plaintiffs.

*Wiggin & Nourie, P.A.*, of Manchester (*Doreen F. Connor* on the brief and orally), for the defendant.

*Abramson, Reis, Brown & Dugan*, of Manchester (*Mark A. Abramson* and *Jared R. Green* on the brief), for Joseph McNally, as *amicus curiae.*

NADEAU, J. The defendant, David Lembo, appeals jury verdicts issued in Superior Court (*Sullivan*, J.) in favor of the plaintiffs, Edward and Joyce Bennett. He challenges the trial court's instruction on "loss of enjoyment of life" damages and the court's denial of his motion to set aside the verdicts or, alternatively, for a remittitur. We affirm.

The following facts were adduced at trial. In July 1994, the defendant rear-ended Mr. Bennett's car while it was stopped at an intersection. On the following day, Mr. Bennett had a severe headache and neck and shoulder pain. Mr. Bennett's treating physician diagnosed cervical strain and prescribed physical therapy, which Mr. Bennett attended for approximately two months.

In March 1995, Mr. Bennett returned to his doctor when he experienced pain after shoveling snow. His doctor again diagnosed

cervical strain and prescribed physical therapy, which Mr. Bennett attended until May 1995. In May 1996, Mr. Bennett saw his doctor, who again prescribed physical therapy, which Mr. Bennett attended until July 1996.

The plaintiffs sued the defendant for negligence and loss of consortium. The defendant conceded legal fault but contested the nature, extent, and cause of the plaintiffs' damages.

Mr. Bennett's treating physician testified that the 1994 accident caused Mr. Bennett to suffer a 12% permanent impairment. The defendant's expert agreed that Mr. Bennett suffered from a permanent impairment, but he assessed it at 9% and believed its cause to be a degenerative disk disease.

The plaintiffs and their children testified that after the accident, Mr. Bennett ceased engaging in many activities, including taking long vacations by car with his wife who does not drive, frequently visiting his daughter and grandchildren on Cape Cod, lifting weights, attending aerobics classes with his wife, wrestling with his grandchildren and coaching them in sports, mowing the lawn, and assisting his children with their home improvement projects.

In charging the jury on damages, the trial court instructed:

In awarding damages, the following may be considered:

One, the reasonable value of medical, hospital, nursing care, services and supplies reasonably required and actually given in the treatment of the plaintiff Edward Bennett and the reasonable value of similar items that will probably be required and given in the future.

Two, reasonable compensation for any pain, discomfort, fears, anxiety or other mental or emotional distress suffered by the plaintiff Edward Bennett and any similar suffering that would probably be experienced in the future.

Three, a permanent impairment; a sum to fairly and reasonably compensate the plaintiff for the loss of bodily functions and permanent physical disability to his body and to his limbs which he has sustained and is likely to sustain in the future.

No definite standard or method of mathematical calculation is prescribed by law by which to fix reasonable compensation for pain and suffering, nor is the opinion of any witness required as to the amount of such compensation. In making an award for pain and suffering, you should exercise your reasonable judgment, and the damages you

determine have to be fair and reasonable in light of the evidence.

. . . .

In addition, in a case in which the plaintiff has established permanent injuries, the jury is entitled to award such compensation as it determines would fairly and fully compensate the plaintiff for any loss of enjoyment of life which he has sustained as a result of the defendant's legal fault. This element is separate and distinct from the claim of economic loss and conscious pain and suffering. . . .

It concerns the inability, if any, you find from the evidence, of the plaintiff to carry on and enjoy a life in a manner had the accident not occurred.

The defendant objected to the instruction regarding loss of enjoyment of life damages on the basis that such damages are unavailable under New Hampshire law, and that the instruction duplicated the other instructions with respect to general damages. The jury returned a $75,000 verdict for Mr. Bennett and a $25,000 verdict for Mrs. Bennett. The trial court denied the defendant's motion to set aside the verdicts or, alternatively, for a remittitur, and this appeal followed.

## I. Loss of Enjoyment of Life Damages

The defendant first argues that loss of enjoyment of life damages are unavailable under New Hampshire law. Second, he argues that the instruction allowed duplicate damages because it addressed loss of enjoyment of life damages as a "separate and distinct" element of damages.

"We review jury instructions in context and will not reverse unless the charge, taken in its entirety, fails to adequately explain the law applicable to the case so that the jury could have been misled." *Simpson v. Wal-Mart Stores*, 144 N.H. 571, 574, 744 A.2d 625, 628 (1999) (quotation omitted).

We have recently addressed the compensability of "loss of life" damages in an action brought pursuant to RSA 556:12 (Supp. 1999), New Hampshire's wrongful death statute. *See Marcotte v. Timberlane/Hampstead School Dist.*, 143 N.H. 331, 336-45, 733 A.2d 394, 399-405 (1999). In *Marcotte*, we held that the language "probable duration of . . . life but for the injury" in RSA 556:12, I, authorizes recovery for loss of life as a separate element of damages in a wrongful death action. *See id.* at 345, 733 A.2d at 405. We noted,

however, that the language in RSA 556:12, I, authorizing recovery for "other elements [of damage] allowed by law," which "refers to elements of damages recoverable in actions where death is not a factor, . . . may include the hedonic element, which is generally compensable as loss of enjoyment of life in bodily injury cases in many jurisdictions." *Id.* at 339, 733 A.2d at 401 (citation omitted). Having found loss of life damages under the statute, we declined to "determine the nature or scope of the hedonic element, if it exists, encompassed by the phrase, 'other elements provided by law.'" *Id.* at 340, 733 A.2d at 401. The case before us squarely raises the existence, nature, and scope of "loss of enjoyment of life" damages under New Hampshire law.

Loss of enjoyment of life damages "connote[] the deprivation of certain pleasurable sensations and enjoyment through impairment or destruction of the capacity to engage in activities formerly enjoyed by the injured plaintiff." *Fantozzi v. Sandusky Cement Products Co.*, 597 N.E.2d 474, 481 (Ohio 1992). That such losses exist is beyond dispute.

> The capacity to enjoy life . . . is unquestionably an attribute of an ordinary healthy individual. The loss of that capacity as a result of another's negligent act is at least as serious an impairment as the permanent destruction of a physical function, which has always been treated as a compensable item under traditional tort principles.

*McDougald v. Garber*, 536 N.E.2d 372, 377 (N.Y. 1989) (*Titone*, J., dissenting) (citations omitted).

■ Relying principally upon *Marcotte*, 143 N.H. at 345, 733 A.2d at 405, and *Ham v. Maine-New Hampshire Interstate Bridge Authority*, 92 N.H. 268, 30 A.2d 1 (1943), the defendant argues that such losses are not recoverable absent specific legislative authorization. The defendant cites no other authority for this proposition, which we reject. In *Marcotte* and *Ham*, the plaintiffs sought damages not for loss of enjoyment of life, but for death. *See Marcotte*, 143 N.H. at 345, 733 A.2d at 405; *Ham*, 92 N.H. at 275, 30 A.2d at 6. Further, to hold that damages for loss of enjoyment of life are not recoverable apart from legislative authorization would be inconsistent with the underlying purpose of compensatory damages, which is to make the plaintiff whole again. *See Smith v. Cote*, 128 N.H. 231, 243, 513 A.2d 341, 348 (1986). Accordingly, we hold that damages for loss of enjoyment of life are compensable under New Hampshire law.

The court's instruction explicitly states that loss of enjoyment of life is an element of damages "separate and distinct" from "economic loss and conscious pain and suffering," not from permanent impairment. Having concluded that the trial court instructed the jury that it could award loss of enjoyment of life damages as part of the award for permanent impairment, but not as part of any award for pain and suffering, we now determine whether this instruction was proper. We conclude that it was.

To determine whether damages for loss of enjoyment of life are an element of impairment, we must first examine the nature of such an award. An award for permanent impairment compensates the plaintiff for the permanent "loss resulting from complete or partial disability in health, mind, or person." *Flannery v. United States*, 297 S.E.2d 433, 436 (W. Va. 1982). Such an award "encompasses compensation for the inability to pursue one's normal activities and compensates for the status of being limited or incapacitated." *Eyoma v. Falco*, 589 A.2d 653, 661-62 (N.J. Super. Ct. App. Div. 1991). In short, an award for permanent impairment compensates the victim for the inability to function as a "whole person." *See Flannery*, 297 S.E.2d at 436.

■ Damages for loss of enjoyment of life compensate a plaintiff for the lost ability to engage in activities that once brought pleasure. The inability to engage in certain activities is the natural result of the incapacity that an impairment award is designed to compensate. *See Eyoma*, 589 A.2d at 662. As such, "the degree of a permanent injury is measured by ascertaining how the injury has deprived the plaintiff of his customary activities as a whole person." *Flannery*, 297 S.E.2d at 436. Accordingly, we agree with those courts that have found damages for loss of enjoyment of life to be a component of permanent impairment. *See id.; Eyoma*, 589 A.2d at 662; *Canfield v. Sandock*, 563 N.E.2d 1279, 1282 (Ind. 1990) (plurality). We leave for another day the question of whether a party can obtain loss of enjoyment of life damages for a non-permanent impairment. The court's instruction on loss of enjoyment of life damages, therefore, adequately explained the law and was not erroneous. *See Simpson*, 144 N.H. at 574, 744 A.2d at 628.

## II. The Verdicts

The defendant argues that the trial court should have set aside the verdicts or granted a remittitur. "Direct review of a damages award is the responsibility of the trial judge, who may disturb a verdict as excessive (or inadequate) if its amount is conclusively

against the weight of the evidence and if the verdict is manifestly exorbitant." *Marcotte*, 143 N.H. at 348, 733 A.2d at 407 (quotation, brackets, and ellipsis omitted). We will not set aside a verdict unless it is "so *manifestly* exorbitant that *no* reasonable person could say that the jury was not influenced by partiality or prejudice, or misled by some mistaken view of the merits of the case." *Steel v. Bemis*, 121 N.H. 425, 428, 431 A.2d 113, 116 (1981) (quotation omitted).

■ "Our task on review is not to attempt to ascertain or divine the one and only correct verdict." *Marcotte*, 143 N.H. at 349, 733 A.2d at 407 (quotation omitted). Particularly where noneconomic damages have been claimed, we "rely heavily upon the jury and the trial court, who hear the testimony and weigh the facts, to reach a just result." *Steel*, 121 N.H. at 428, 431 A.2d at 116. The party seeking to modify a verdict's amount bears a heavy burden. *See Daigle v. City of Portsmouth*, 129 N.H. 561, 588, 534 A.2d 689, 704 (1987).

The defendant argues that the verdict for Mr. Bennett was excessive in light of his *de minimis* medical expenses and a "lack of evidence concerning an objectively visible ongoing permanent injury." We disagree.

The plaintiffs introduced evidence from which a reasonable jury could have concluded that Mr. Bennett sustained a permanent impairment. There was evidence that in the two years following the accident, Mr. Bennett spent approximately six months in physical therapy, and that he would require similar treatment from time to time for the remainder of his life. The jury could also have found that prior to the accident, Mr. Bennett was physically active, and that he is no longer as active as a result of it. Mr. Bennett testified that his pain, while not always debilitating, remains a constant presence in his life, and can become debilitating with physical exertion.

■ Finally, the plaintiffs introduced evidence from which a jury could reasonably have found that Mr. Bennett can no longer engage in many of the activities he had planned to enjoy throughout his retirement as a result of the accident. In light of this evidence, we cannot conclude that no reasonable jury could have awarded Mr. Bennett $75,000.

■ Likewise, we conclude that Mrs. Bennett's verdict of $25,000 was not conclusively against the weight of the evidence. An award for loss of consortium compensates a victim's spouse for the loss of services, society, and sexual rights. *See Siciliano v. Capitol City*

*Shows, Inc.*, 124 N.H. 719, 726, 475 A.2d 19, 22 (1984); RSA 507:8-a (1997).

■ The plaintiffs introduced evidence from which a jury could reasonably have found that Mrs. Bennett lost a significant measure of her husband's companionship in recreational activities, household chores, travel, and other pursuits. We cannot conclude, therefore, that no reasonable jury could have awarded Mrs. Bennett $25,000 for the loss of her husband's services and society. *See Steel*, 121 N.H. at 429, 431 A.2d at 116.

*Affirmed.*

BROCK, C.J., sat for oral argument but did not take part in the final vote; JOHNSON, J., sat for oral argument but retired prior to the final vote; THAYER, J., sat for oral argument but resigned prior to the final vote; HORTON, BRODERICK, and DALIANIS, JJ., concurred; NADEAU and DALIANIS, JJ., took part in the final vote by consent of the parties.