NOTICE:  This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports.  Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press.  Errors may be reported by e-mail at the following address: reporter@courts.state.nh.us.  Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Rockingham
No. 2016-0692


BRANDON STACHULSKI

v.

APPLE NEW ENGLAND, LLC

Argued:  November 14, 2017
Opinion Issued:  July 18, 2018


Backus, Meyer & Branch, LLP, of Manchester (BJ Branch on the brief and orally), for the plaintiff.


Bonner Kiernan Trebach & Crociata, LLP, of Boston, Massachusetts (Kenneth H. Naide, John A. Kiernan, and Andrew Butz, on the brief, and Mr. Kiernan orally), for the defendant.


HANTZ MARCONI, J.  The plaintiff, Brandon Stachulski, brought suit against the defendant, Apple New England, LLC, under a theory of strict products liability alleging that he contracted salmonella by eating a hamburger at the defendant's restaurant, Applebee's Neighborhood Bar and Grill, where he dined with his wife and brother-in-law in February 2014.  The defendant disputed the allegation that the hamburger was the source of the plaintiff's salmonella illness and asserted that the plaintiff's pet lizard or other food sources could just as likely be the cause of his illness.  Following a three-day

trial in Superior Court (Schulman, J.), the jury returned a general verdict in the plaintiff's favor, awarding him $750,000 in damages.

On appeal, the defendant argues that the trial court erred by: (1) admitting unfairly prejudicial evidence; (2) admitting the plaintiff's expert's testimony; (3) submitting the issue of causation to the jury; (4) instructing the jury on awarding hedonic and future pain and suffering damages; (5) permitting the plaintiff's counsel to make certain statements during his opening and closing arguments; and (6) denying its request for remittitur. We affirm.

The defendant first argues that the trial court erred in admitting unfairly prejudicial testimony. Prior to trial, the defendant moved in limine to exclude the plaintiff's testimony about his belated offer to test the lizard for salmonella. We construe the defendant's argument as being a challenge to the trial court's denial of its motion in limine. "Because the trial court ruled upon the admissibility of the challenged evidence before trial, we consider only the offers of proof presented at the pretrial hearing." State v. Gordon, 161 N.H. 410, 414 (2011).

As the appealing party, the defendant has the burden of providing a record sufficient to decide its issues on appeal. See Bean v. Red Oak Prop. Mgmt., 151 N.H. 248, 250 (2004). Although the defendant provided its motion in limine to exclude this testimony, it has failed to provide any evidence regarding the basis for the trial court's denial. Absent a complete record, we must assume that the evidence was sufficient to support the result reached by the trial court. See id. Thus, we cannot conclude that it was an unsustainable exercise of discretion for the trial court to deny the defendant's motion in limine.

The defendant next argues that the trial court committed an unsustainable exercise of discretion in allowing the plaintiff's expert, Seth D. Rosenbaum, M.D., to testify. The defendant contends that Dr. Rosenbaum's testimony was not "based upon sufficient facts" or "the product of reliable principles and methods," and therefore "resulted from failure to apply accepted principles and methods reliably to adequate facts." Prior to trial, the defendant moved in limine to exclude Rosenbaum's testimony and the court held a hearing to determine its admissibility. Because we construe the defendant's appellate argument regarding the admissibility of Rosenbaum's testimony as a challenge to the trial court's denial of its motion in limine, "we consider only the offers of proof presented at the pretrial hearing." Gordon, 161 N.H. at 414.

Rule 702 authorizes the trial court to admit expert witness testimony. See N.H. R. Ev. 702. To be admissible, however, expert testimony must rise to a threshold level of reliability. Osman v. Lin, 169 N.H. 329, 335 (2016). To determine the reliability of expert testimony, the trial court must comply with

2

RSA 516:29-a (2007). Id. Portions of RSA 516:29-a codify principles outlined by the United States Supreme Court in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 592-95 (1993). Id.; see also Baker Valley Lumber v. Ingersoll-Rand, 148 N.H. 609, 614 (2002) (applying the Daubert framework to evaluate the reliability of expert testimony under Rule 702).

RSA 516:29-a provides:

I. A witness shall not be allowed to offer expert testimony unless the court finds:

(a) Such testimony is based upon sufficient facts or data;

(b) Such testimony is the product of reliable principles and methods; and

(c) The witness has applied the principles and methods reliably to the facts of the case.

II. (a) In evaluating the basis for proffered expert testimony, the court shall consider, if appropriate to the circumstances, whether the expert's opinions were supported by theories or techniques that:

(1) Have been or can be tested;

(2) Have been subjected to peer review and publication;

(3) Have a known or potential rate of error; and

(4) Are generally accepted in the appropriate scientific literature.

(b) In making its findings, the court may consider other factors specific to the proffered testimony.

"The trial court functions only as a gatekeeper, ensuring a methodology's reliability before permitting the fact-finder to determine the weight and credibility to be afforded an expert's testimony." Baker Valley Lumber, 148 N.H. at 616. Although the proponent of an expert witness bears the burden of proving the admissibility of the expert's testimony, see State v. Newman, 148 N.H. 287, 291 (2002), the burden is not especially onerous because "Rule 702 has been interpreted liberally in favor of the admission of expert testimony." Levin v. Dalva Bros., Inc., 459 F.3d 68, 78 (1st Cir. 2006); see also Bartlett v. Mutual Pharmaceutical Co., 742 F. Supp. 2d 182, 187 (D.N.H. 2010). "Thus, as long as an expert's scientific testimony rests upon good grounds, it should

3

be tested by the adversary process — competing expert testimony and active cross-examination — rather than excluded from juror's scrutiny for fear that they will not grasp its complexities or satisfactorily weigh its inadequacies." Osman, 169 N.H. at 335 (quotation omitted).

On appeal, we review the trial court's decision to admit Rosenbaum's testimony under our unsustainable exercise of discretion standard. See id. at 336. "In applying our unsustainable exercise of discretion standard of review, we determine only whether the record establishes an objective basis sufficient to sustain the discretionary judgment made." Id. (quotation omitted). "Under our unsustainable exercise of discretion standard, our task is not to determine whether we would have found differently, but only to determine whether a reasonable person could have reached the same decision as the trial court on the basis of the evidence before it." Id. (quotation and brackets omitted).

We first review whether Rosenbaum's testimony was "based upon sufficient facts or data." RSA 516:29-a, I(a). Rosenbaum relied upon the following facts when formulating his opinion, to a reasonable degree of medical certainty, that the plaintiff contracted salmonella from the defendant-restaurant's hamburger: (1) the plaintiff's medical records recounted his diagnosis of non-typhodial salmonella, which is typically food-borne; (2) the plaintiff owned a pet lizard, with whom his wife and daughter also had contact, yet neither became ill; (3) the plaintiff's brother-in-law also ate a hamburger at the defendant's restaurant and suffered similar gastrointestinal symptoms; (4) the plaintiff prepared the meals that he and his wife ate from home, yet his wife did not become ill; (5) the plaintiff's wife has celiac disease, making her more prone to contract salmonella and other infections; and (6) the plaintiff presented symptoms within the six to 72 hour incubation, or "look-back," period for salmonella following his meal at the defendant's restaurant. Based upon the pretrial record before us, including Rosenbaum's deposition and report and the pretrial hearing transcript, we cannot conclude that the court unsustainably exercised its discretion in finding that Rosenbaum's testimony was based upon sufficient facts.

We next review whether Rosenbaum's testimony was the "product of reliable principles and methods," RSA 516:29-a, I(b), and whether he "applied the principles and methods reliably to the facts," RSA 516:29-a, I(c). On appeal, the defendant argues, as it did at the motion in limine hearing, that Rosenbaum failed to lay a proper foundation and exercise the appropriate methodology, and therefore, his opinion was unscientific and should have been excluded. The plaintiff counters that both Rosenbaum and the defendant's expert, Sigal Yawetz, M.D., considered the same facts, but reached different conclusions, and thus Rosenbaum's opinion was scientifically valid.

Before his pretrial deposition, Rosenbaum reviewed the plaintiff's medical records and the depositions of the plaintiff, his wife, and his brother-in-law.

4

During his deposition, Rosenbaum testified about his experience and qualifications as an infectious disease physician and explained the typical symptoms of salmonella. Using his expertise, Rosenbaum discussed and considered the above mentioned facts, eliminated potential causes, and concluded that the hamburger from the defendant's restaurant was, more likely than not, the cause of the plaintiff's salmonella illness. See Westberry v. Gislaved Gummi AB, 178 F.3d 257, 262 (4th Cir. 1999) (differential etiology reached "by determining the possible causes for the patient's symptoms and then eliminating each of these potential causes until reaching one that cannot be ruled out or determining which of those that cannot be excluded is the most likely"); see also Goudreault v. Kleeman, 158 N.H. 236, 247-48 (2009) (recognizing differential etiology as reliable methodology in medical diagnosis and causation cases).

Though the defendant contends, on appeal, that "the only principles and methods that have previously been tested, subjected to peer review, with known or potential error rates, and generally accepted in the scientific literature are the methods used for public health purposes," the defendant has failed to demonstrate how Rosenbaum's methodology "was so altered by a deficient application as to skew the methodology itself," Osman, 169 N.H. at 336. Moreover, the trial court found that Dr. Yawetz did not present a more reliable or preferred methodology. The methodology now proposed by the defendant does not render Rosenbaum's methodology deficient, nor does it demonstrate that Rosenbaum's testimony does not rest upon good grounds. See id. at 335-36. As the gatekeeper, the trial court has the discretion to admit expert testimony that it finds reliable, which will then be tested by competing expert testimony and cross-examination. See id. at 335. Therefore, because the defendant has failed to demonstrate that Rosenbaum's methodology is unreliable, we cannot conclude that the trial court committed an unsustainable exercise of discretion by admitting Rosenbaum's expert testimony.

The defendant also argues that Rosenbaum lacked an adequate foundation to testify that someone with celiac disease, like the plaintiff's wife, would be more susceptible to a salmonella illness than someone without such condition, and therefore, such testimony was "highly prejudicial." We disagree. Rosenbaum's testimony explained that he considered the fact that the plaintiff's wife did not contract salmonella, though she has celiac disease, to decrease the likelihood that the salmonella originated from a source within the home. Moreover, Rosenbaum's deposition testimony recognized that he could not quantify how much more likely someone with celiac disease would be to contract salmonella than someone without such illness. The trial court found that this admission reduced any unfair prejudice. See N.H. R. Ev. 403. We agree. To the extent that there were gaps in Rosenbaum's explanation regarding celiac disease, these omissions "go to the weight to be accorded the opinion evidence, and not to its admissibility." Goudreault, 158 N.H. at 248

5

(quotation omitted). Therefore, we cannot conclude that the trial court's admission of this testimony was an unsustainable exercise of discretion.

Next, the defendant argues that there was insufficient causation evidence to prove that: (1) the hamburger from the defendant's restaurant caused the plaintiff's salmonella; (2) the salmonella would cause the plaintiff future pain and suffering; and (3) the salmonella caused the plaintiff to suffer hedonic damages. Under the doctrine of strict products liability, "[o]ne who sells any product in a defective condition unreasonably dangerous to the user or consumer . . . is subject to liability for physical harm thereby caused to the ultimate user or consumer." Kelleher v. Marvin Lumber & Cedar Co., 152 N.H. 813, 831 (2005) (quotation omitted). Causation is a necessary element in strict liability actions. See Trull v. Volkswagen of America, 145 N.H. 259, 264 (2000). A defective or unreasonably dangerous product is a "proximate cause if it is a substantial factor in bringing about the harm, and if the harm would not have occurred without that conduct." Id. (quotation omitted). The plaintiff bears the burden of proving that the defendant's sale of the defective product was a proximate cause of his injury, illness, or harm. See id. Proximate cause is a question for the trier of fact. Carignan v. N.H. Int'l Speedway, 151 N.H. 409, 414 (2004).

We first address the defendant's argument that there was insufficient evidence to prove that the hamburger caused the plaintiff's salmonella illness. The defendant asserts that the trial court erred when it submitted the case to the jury and thereafter denied its motion for judgment notwithstanding the verdict (JNOV). We disagree.

"A party is entitled to JNOV only when the sole reasonable inference that may be drawn from the evidence, which must be viewed in the light most favorable to the non-moving party, is so overwhelmingly in favor of the moving party that no contrary verdict could stand." Halifax-American Energy Co. v. Provider Power, LLC, 170 N.H. ___, ___ (decided Feb. 9, 2018) (slip op. at 4). We review motions for JNOV de novo. Id.

At trial, the plaintiff submitted sufficient evidence for a reasonable jury to conclude that the defendant-restaurant's hamburger was, more likely than not, the proximate cause of the plaintiff's salmonella illness. In addition to Rosenbaum's testimony detailed above, the jury heard the following evidence: the plaintiff and his brother-in-law each ate a well-done hamburger at the defendant's restaurant around 8:00 p.m. on Monday, February 17, 2014; the plaintiff became violently ill at approximately 2:45 a.m. on Tuesday morning, within the six to 72-hour look-back period for salmonella; and on February 22, 2014, the plaintiff was diagnosed with salmonella. The defendant challenged the plaintiff's causation evidence with its own expert's testimony.

6

Though the causation evidence adduced at trial was conflicting, several reasonable inferences could be drawn from such evidence, including that the defendant-restaurant's hamburger was the cause of the plaintiff's salmonella illness. Thus, the trial court did not err by denying the defendant's motion for JNOV on the issue of liability.

We now turn to the defendant's argument that there was insufficient evidence to prove that the plaintiff's salmonella illness would cause him future pain and suffering. The defendant contends that, in order to submit to the jury the issue of future pain and suffering damages, the plaintiff needed to prove, through expert testimony, that he would experience future pain and suffering as a result of his salmonella illness. The defendant claims that, without such expert testimony, the trial court erred when it denied its motion for directed verdict and submitted the issue of future pain and suffering damages to the jury. The plaintiff counters that the ample medical records submitted to the jury, in conjunction with the plaintiff's testimony and Rosenbaum's expert opinion that "up to one-third of individuals have prolonged gastrointestinal complaints after salmonella," were sufficient to prove the plaintiff's future pain and suffering and to allow jury instruction on such. We agree with the plaintiff.

"A trial court may grant a motion for a directed verdict only if it determines, after considering the evidence and construing all inferences therefrom most favorably to the non-moving party, that no rational juror could conclude that the non-moving party is entitled to any relief." Conrad v. N.H. Dep't of Safety, 167 N.H. 59, 70 (2014) (quotation omitted). "The court may not weigh the evidence or judge the credibility of witnesses and should deny the motion for a directed verdict unless it can affirmatively determine that the plaintiff is not entitled to any relief on the evidence presented." Id. (quotation omitted). Because motions for directed verdict relate to the sufficiency of the evidence, they present questions of law which we review de novo. See Halifax, 170 N.H. at ___ (slip op. at 4).

It is well settled in New Hampshire law that "there can be no recovery for future damages unless there is evidence from which it can be found to be more probable than not that they will occur." Jolicoeur v. Conrad, 106 N.H. 496, 498 (1965). Future damages "are not to include any award for pain and suffering the experiencing of which by the plaintiff is merely possible, conjectural or speculative." Dunham v. Stone, 96 N.H. 138, 140-41 (1950).

To determine whether expert testimony is required, we must determine whether this issue — whether the plaintiff's pain and suffering from salmonella "will continue into the future" — is "within the realm of common knowledge and everyday experience" of the average layman, Laramie v. Stone, 160 N.H. 419, 427 (2010), or whether an expert opinion is needed to "preclude the jury from engaging in idle speculation," Estate of Joshua T. v. State, 150 N.H. 405, 408 (2003) (quotation omitted). "Lay testimony is probative on the issue of

physical injury and the cause of that injury only if the cause and effect are so immediate, direct and natural to common experience as to obviate any need for an expert medical opinion." Reed v. County of Hillsborough, 148 N.H. 590, 591 (2002) (quotation omitted). Expert testimony is required "if any inference of the requisite causal link must depend on observation and analysis outside the common experience of jurors." Id. (quotation omitted).

Here, the plaintiff submitted medical records to the jury. The defendant did not object to the admission of more than 700 pages of medical records, nor did it request a limiting instruction. The records characterize the plaintiff's ongoing gastrointestinal symptoms as "most likely post-infectious . . . due to the salmonella." See, e.g., Bailey v. Cataldo Ambulance Service, Inc., 832 N.E.2d 12, 18 (Mass. App. Ct. 2005) (holding medical records contain sufficient expert opinion evidence on causation). Moreover, the jury heard the expert testimony of Rosenbaum, who opined that "up to one-third of individuals have prolonged gastrointestinal complaints after salmonella." This expert testimony assisted the jury in its decision regarding whether the plaintiff's salmonella illness would, more probably than not, cause him to suffer future pain. Reed, 148 N.H. at 591.

The plaintiff also testified that, more than two years after his salmonella illness, he continues to work with physicians and a nutritionist to treat and manage his ongoing gastrointestinal symptoms, as evidenced by the medical records. He explained that there are foods and beverages, including alcohol, that he can no longer consume without a potential "flare up," which prevents him from enjoying time with friends. He ceased consumption of sugar, beef, caffeine, and carbonated beverages and decreased his intake of fruits and vegetables. He spoke about the prescriptions he takes on an ongoing basis to control his symptoms and also explained some of the side effects of those medications. The plaintiff's lay testimony recounting his continuous gastrointestinal symptoms since his salmonella diagnosis was "probative on the issue of physical injury and the cause of that injury." Id.

To the extent that the defendant argues that there was insufficient evidence that the salmonella caused the plaintiff's delayed-onset patchy colitis, we find such evidence to be unnecessary. The jury was not instructed that it needed to find that the plaintiff suffered from patchy colitis, or that the patchy colitis was caused by his salmonella illness. Moreover, the jury returned a general verdict that did not specify the allocation of the damages award. The jury had sufficient evidence, from testimony and medical records, to conclude that the plaintiff suffered, and would continue to suffer, pain and residual symptoms from his salmonella illness.

Based upon our review of the record — including the expert testimony of Rosenbaum, the medical records, and the plaintiff's testimony — viewed in the light most favorable to the plaintiff, we conclude that the plaintiff produced

sufficient evidence from which reasonable jurors could find that the salmonella was the cause of his ongoing gastrointestinal symptoms, and more likely than not, they will continue in the future. We recognize that it would not have been unreasonable for the jury to conclude otherwise. Under these circumstances, however, the inferences that may be drawn from the evidence are not "so overwhelmingly in favor of the [defendant] that no contrary verdict could stand," Halifax, 170 N.H. at ___ (slip op. at 4), and we will not endeavor "to reweigh the evidence and set aside the jury verdict merely because the jury could have drawn different inferences or conclusions or because we feel that other results are more reasonable," Bronson v. Hitchcock Clinic, 140 N.H. 798, 804 (1996) (quotation and brackets omitted). "Under our jury system, reasonably disputable issues of fact are to be resolved by the jury." Id. (quotation omitted). We find no error in the trial court's denial of the defendant's motion for directed verdict on the issue of whether the plaintiff would likely sustain future pain and suffering and in the court's submission of that damages issue to the jury.

The defendant also argues that the plaintiff failed to introduce expert testimony regarding permanent impairment sufficient to submit the question of hedonic damages to the jury, and thus the trial court erred in denying its motion for directed verdict on that issue. Because we decline to condition hedonic damages on proof of a permanent impairment, we need not consider whether expert testimony is necessary to establish permanency.

In Bennett v. Lembo, 145 N.H. 276 (2000), we left for another day the question of whether hedonic damages are available for alleged non-permanent impairments. Bennett, 145 N.H. at 281. We recognized that hedonic damages, or loss of enjoyment of life damages, "compensate a plaintiff for the lost ability to engage in activities that once brought pleasure." Id. "The inability to engage in certain activities is the natural result of the incapacity that an impairment award is designed to compensate." Id. Courts in other jurisdictions have explained that hedonic damages are designed to include compensation for the plaintiff's inability to perform or engage in his or her "usual specific activities which had given pleasure to this particular plaintiff, such as playing golf, dancing, bowling, playing musical instruments, and engaging in specific outdoor sports." E.g., Ramos v. Kuzas, 600 N.E.2d 241, 243 (Ohio 1992). We see nothing in the Bennett rationale that would require plaintiffs to suffer a permanent loss of enjoyment of life in order to sustain an award of hedonic damages. Accordingly, we hold that hedonic damages are available to compensate plaintiffs for the temporary or permanent inability to engage in such pleasurable aspects of life. See Smith v. City of Evanston, 631 N.E.2d 1269, 1279 (Ill. App. Ct. 1994) (instructing jury on loss of enjoyment of life damages when plaintiff suffers "temporary or permanent inability to pursue the pleasurable aspects of life").

9

Here, the jury could reasonably have found that the plaintiff was limited in his activities. At trial, the plaintiff testified that his gastrointestinal symptoms continue to interrupt and restrict his life. The jury heard testimony that the plaintiff can no longer eat food and drink beverages of his choice without repercussions, hike at his leisure, or participate in other activities without fearing embarrassing accidents in the absence of a nearby restroom. The jury also received medical evidence linking the plaintiff's ongoing limitations to his salmonella illness. Viewing this evidence in the light most favorable to the plaintiff, the jury could reasonably have found that the plaintiff "lost [the] ability to engage in activities that once brought pleasure." Bennett, 145 N.H. at 281. We hold that the trial court did not err in denying the defendant's motion for directed verdict on the issue of hedonic damages and submitting that issue to the jury.

Similarly, to the extent that the defendant argues that the trial court erred in instructing the jury on hedonic and future pain and suffering damages, we disagree. A trial court's decision to give a particular jury instruction must be based upon "some evidence to support a rational finding in favor of that instruction." N.H. Ball Bearings v. Jackson, 158 N.H. 421, 434 (2009) (quotation and brackets omitted). Because we find that there was "some evidence" that would allow the jury to award the plaintiff hedonic and future pain and suffering damages, we find no error in the trial court's instruction on these damages.

Next, the defendant points to numerous statements made by the plaintiff's counsel during opening and closing statements and argues that the trial court's failure to sua sponte strike such statements deprived the defendant of a fair trial and constituted plain error. The defendant asserts that such error requires a new trial.

The defendant acknowledges that these purported errors were not brought to the attention of the trial court. Nevertheless, under the plain error rule, we may consider claims of error not raised before the trial court. Halifax, 170 N.H. at ___ (slip op. at 9). "However, the rule should be used sparingly, its use limited to those circumstances in which a miscarriage of justice would otherwise result." Id. To find plain error: "(1) there must be an error; (2) the error must be plain; (3) the error must affect substantial rights; and (4) the error must seriously affect the fairness, integrity or public reputation of judicial proceedings." Id. (quotation omitted).

Statements and arguments that appeal to the emotions or prejudices of jurors may be improper when "the statements or arguments take the form of counsel's presentation of facts which have not been introduced in, or are not fairly inferable from, evidence at trial." McLaughlin v. Fisher Eng'g, 150 N.H. 195, 204 (2003) (quotation omitted).

10

The defendant argues that the trial court erred in failing to <u>sua</u> <u>sponte</u> strike the plaintiff's counsel's opening and closing statements referencing Rosenbaum's expert medical opinion, testimony about celiac disease, the failure to test the lizard for salmonella, and the inferences from this evidence that the plaintiff's counsel suggested to the jury. The defendant argues that these statements were improper and the trial court should have acted on its own to strike them because they lacked sufficient scientific reliability or were based upon facts not in evidence. The facts highlighted by the plaintiff's counsel, however, were introduced into evidence and questions of reliability and credibility are to be resolved by the jury. <u>See</u> <u>Osman</u>, 169 N.H. at 339. We hold that the drawing of favorable inferences from this evidence by the plaintiff's counsel in opening and closing statements was not improper. Moreover, the trial court's failure to <u>sua</u> <u>sponte</u> strike these statements was not error, let alone plain error. <u>See</u> <u>State v. Drown</u>, 170 N.H. ___, ___ (decided June 5, 2018) (slip op. at 12) (declining to find error in trial court's failure to <u>sua</u> <u>sponte</u> interrupt counsel's argument). Accordingly, we need not address the remaining factors of the plain error analysis.

Finally, independent of all previously addressed arguments, the defendant contends that the trial court erroneously denied its motion for remittitur, arguing that the jury's damages award of $750,000, when the plaintiff's medical expenses totaled only $43,000, was manifestly exorbitant and plainly excessive. We disagree.

"Direct review of a damages award is the responsibility of the trial judge, who may disturb a verdict as excessive (or inadequate) if its amount is conclusively against the weight of the evidence and if the verdict is manifestly exorbitant." <u>Kelleher</u>, 152 N.H. at 838 (quotation omitted). "The proper standard for the trial court's review of a jury award is whether the verdict is fair." <u>Id</u>. (quotation omitted). "It is the trial judge's responsibility to both ensure that the trial is fairly conducted and correct or vacate what turns out to be an unfair result." <u>Id</u>. "Whether remittitur is appropriate rests with the trial court's sound discretion." <u>Id</u>. (quotation omitted). "Absent an unsustainable exercise of discretion, we will not reverse the trial court's decision." <u>Id</u>. (quotation omitted). "On review, we will not attempt to ascertain or divine the one and only correct verdict." <u>Id</u>. (quotation omitted). "The party seeking to modify the verdict's amount bears a heavy burden." <u>Id</u>. (quotation omitted). At trial, extensive evidence was admitted regarding the condition of the plaintiff's health during and following his February 2014 salmonella illness. The plaintiff testified that his inability to control his bowels embarrassed him and interrupted his personal and professional life. He detailed the changes to his diet, lifestyle, and habits in order to avoid and mitigate future discomfort and "flare ups." The jury heard testimony regarding salmonella's symptoms, complications, treatments, and side effects. The jury was also provided with voluminous medical records demonstrating the extent of the plaintiff's medical history since February 2014.

11

Having previously determined that this evidence was properly admitted and that it was proper for the jury to be instructed on hedonic and future pain and suffering damages, we conclude there was sufficient evidence and testimony to support the jury's damages award.  In light of the evidence presented at trial, we cannot say that the damages were manifestly exorbitant.  Accordingly, we conclude that the trial judge did not commit an unsustainable exercise of discretion in upholding the jury's damages award.

<u>Affirmed</u>.

LYNN, C.J., and HICKS and BASSETT, JJ., concurred; DALIANIS, C.J., retired, specially assigned under RSA 490:3, concurred.